[Sac. No. 1557. In Bank.—October 3, 1907.]

MARY FLOOD, Appellant, v. CHARLES TEMPLETON, Executor, etc., of James Sullivan, Deceased, et al., Respondents.

JUDGMENT OBTAINED BY FRAUD—RELIEF AGAINST IN EQUITY—EXTRINSIC FRAUD.—Equity will not relieve from the effect of a judgment claimed to have been obtained by fraud when the fraud charged relates to matters upon which the judgment was regularly obtained and where an opportunity was given to the party against whom it was entered to contest the matters in issue or present any defense which was available,—fraud which was directed to or bore upon the claim or issue which was before the court for determination, as when a judgment is entered upon a fraudulent claim or is procured by false testimony, where the party had an opportunity to be heard as to these matters. Such rule, however, has no application to extrinsic or collateral fraud, for which equity will relieve from a judgment obtained thereby. Such fraud operates not upon matters pertaining to the judgment itself, but to the manner in which it is procured, and the principal ground upon which equity affords relief is that by reason of the fraud practiced upon the party against whom the judgment was obtained there was no adversary trial of the issues in the action, and that he was prevented through such fraudulent act of his adversary, and without any fault on his own

part, from presenting a meritorious defense to the action. The facts of the present case constitute one of extrinsic or collateral fraud.

ID.—LAW OF CASE—JUDGMENT ON DEMURRER—DIFFERENT CAUSE OF ACTION.—The rule of the "law of the case" is only applicable where the same matters which were determined in the previous appeal are involved in the second appeal; and while a judgment rendered upon the sustaining of a demurrer to a former complaint will be a bar to another action based upon the same allegations of fact, yet where the facts are different and present different questions of law, as they do in the present case, no such bar can be asserted.

ID.—MORTGAGE FORECLOSURE—PLEADING—DATE OF AND COURT RENDERING JUDGMENT.—In an action to set aside a judgment for the foreclosure of a mortgage on land, the failure of the complaint to specifically allege the date of the judgment or of the court in which it was rendered cannot be taken advantage of on general demurrer. It will be presumed that the judgment was rendered by the superior court of the county where the mortgaged property was situated.

QUIETING TITLE—PROOF OF LEGAL TITLE—RIGHT OF POSSESSION.—In an action to quiet title proof of the legal title in a party raises a presumption of the right of possession in him and establishes a *prima facie* case in his favor.

APPEAL from a judgment of the Superior Court of Glenn County. Oval Pirkey, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, for Appellant.

R. L. Clifton, and McCoy & Gans, for Respondents.

LORIGAN, J.—This is an appeal by the plaintiff from a judgment in favor of defendants. The principal question involved on the appeal from the judgment itself is as to the correctness of the ruling of the lower court in sustaining a demurrer to a portion of the amended answer of plaintiff to the cross-complaint of defendants. A bill of exceptions accompanies the appeal from the judgment upon which appellant presents other questions for consideration.

This case was here before, the defendant therein being then the appellant, and is reported in *Flood* v. *Templeton*, 148 Cal. 374, [83 Pac. 148].) This court on that appeal, which was from a judgment in favor of plaintiff, held that the trial court

erred in not sustaining a demurrer to the complaint, and the cause was reversed.

In order to properly understand the point relative to the ruling on the demurrer now under consideration, it will be necessary to refer to the complaint involved on the former appeal. It alleged facts under which plaintiff sought the specific performance of a contract claimed to have been made between James Sullivan in his lifetime and herself, wherein he agreed to devise to her by will the real property described in the complaint. The facts alleged were that on February 4, 1899, she was the owner and in possession of the lands and owed Sullivan upon her promissory note secured by a mortgage on the land $9,696 principal, and $5,226 interest; that upon the first day of January, 1899, Sullivan had become indebted to her in the sum of $5,875.50 and interest thereon for board, lodging, washing, nursing, etc., and for the pasturage of his stock upon the said premises; that in February, 1899, Sullivan made demand on plaintiff for the payment of her indebtedness; that the first installment of the promissory note, amounting to the sum of $969.67, was barred by the statute of limitations; that in the month of February, 1899, immediately after the demand for the payment of said note by Sullivan, she and Sullivan entered into an agreement that Sullivan should proceed to foreclose the note and mortgage and obtain a deed to the lands through such proceedings; that plaintiff should refrain in such foreclosure suit from pleading the statute of limitations against the first installment due on the note, or setting up as a setoff the amount of $5,875.50 which was due from Sullivan to her, in consideration of which Sullivan agreed that after he had obtained title to the property through the foreclosure proceedings he would rent to plaintiff the premises as long as he, the said Sullivan, lived, for the sum of four hundred dollars a year, and would leave a will devising to her said property, so that upon his death she would become the owner in fee of the whole of it clear of encumbrance; that pursuant to the agreement Sullivan commenced foreclosure proceedings; that she refrained from pleading the statute of limitations or setting up as an offset the amount due her from Sullivan, and permitted Sullivan to take judgment in the foreclosure suit for the whole amount of said note, to wit, the sum of $14,922.87. The complaint

then alleged the sale under foreclosure proceedings and the
vesting of the title in Sullivan by commissioner's deed.    It
then averred that plaintiff performed all the terms and condi-
tions of her agreement with Sullivan; that she took posses-
sion of the land under the terms of the agreement; had ever
since occupied it, and during his lifetime paid to Sullivan
the rent, as agreed, of four hundred dollars per annum.    The
complaint then avers that Sullivan died on the twenty-second
day of September, 1903; that he failed and neglected to make
the will devising the property to plaintiff, but left a will
devising it to others.

Upon these facts the plaintiff based her claim for a specific
performance of the contract, and the complaint reciting them
was demurred to in the lower court on the ground that it
stated no cause of action for such relief.    The demurrer was
overruled, and on the appeal referred to it was held that the
demurrer should have been sustained; that the facts did not
bring the case within the line of authorities holding that
specific performance of a contract to leave property by will
may be decreed when no other adequate relief is available;
where there is present the element of peculiar personal services
fully performed under the contract which are incapable of
compensation in money, (*Owens* v. *McNally*, 113 Cal. 444, [45
Pac. 710]; *McCabe* v. *Healy*, 138 Cal. 81, [70 Pac. 1008],)
that the complaint in question showed that no services what-
ever were performed, but at most, plaintiff forebore to press a
fixed money demand; that for this alleged breach of his
promise by deceased she could be compensated in money in
an action at law, and hence was not in a position to apply
to a court of equity.    The judgment was accordingly reversed,
with directions to the lower court to enter an order sustaining
the demurrer to the complaint.

As the pleadings then stood, the complaint being eliminated
therefrom by said order of this court, there was left only a
cross-complaint which the defendants had originally filed
praying for a judgment quieting title against plaintiff and
which she had answered, denying its allegations and setting
up a claim to the ownership of the property in herself based
upon the same averments as were contained in her complaint.

When the case went back to the trial court for further
proceedings, the plaintiff, by leave of the court, filed an

amended answer to the said cross-complaint of defendants, in which, besides denying its allegations, she set up an affirmative defense and prayed for affirmative relief. This amended answer set forth affirmatively, as in the original complaint and answer to the cross-complaint of which it was amendatory, the execution of the note and mortgage of the premises in question by herself and her husband (who thereafter and in 1898 had died) in favor of Sullivan, and that on February 22, 1899, there was due the latter on said note the sum of $14,922.87, payment of which he had demanded. It was then alleged that on said February 22, 1899, the said real property covered by the mortgage was, and is now, of the value of twenty thousand dollars; that prior to said date there were mutual accounts between Sullivan and herself unsettled and undetermined, but which were on said date determined, settled, and agreed on between them; that in said settlement it was agreed that she was entitled to a credit and setoff against the amount due on the said promissory note of $10,-922.87, and it was then determined and agreed between them that there was only due Sullivan on said note the sum of four thousand dollars, and that such balance became and was an account stated as between Sullivan and herself; that for more than twenty years prior to the death of her husband said Sullivan had made his home with her husband and herself on the said premises, and during that time plaintiff had washed for, nursed, and cared for said Sullivan in sickness and health and treated him as one of the family, and a feeling and relation of the greatest confidence and friendship had existed between them during that period and continued to exist between Sullivan and plaintiff until long after the 22d of February, 1899; that at the time it was agreed and determined between them that only the sum of four thousand dollars was due Sullivan, plaintiff was able to, could have, and offered to borrow said sum, pay it to Sullivan, and thus secure a release from his indebtedness, but that Sullivan protested against and objected to plaintiff borrowing the sum of four thousand dollars to pay him off, and stated that his property and all included in the mortgage would belong to her anyway at his death; that all he wanted was enough for a living while he lived; that he did not expect to live many years; that said plaintiff had always been like a sister to him and he intended

that she should have all his property when he died; that there was no necessity for her borrowing the money to pay off the four thousand dollars; that said Sullivan there and then promised and agreed with plaintiff that if she would permit him to foreclose the mortgage for the sum of $14,922.87 and would refrain from setting up as a counterclaim or setoff the amount due to her from Sullivan, namely, the sum of $10,922.87, that he would buy in the property at foreclosure sale, would rent the same to plaintiff as long as he lived for four hundred dollars a year; that at his death he would leave a will bequeathing all of the said property to her clear of encumbrance, and represented to her that he would only be holding the property in trust for her until his death, and at his death she would have all of it; that confiding in the promises of Sullivan and believing that he would do as he agreed, she consented and agreed that she would permit him to foreclose said mortgage as he desired, would not set up her counterclaim and would permit him to buy the same in at foreclosure sale and take a deed thereto; that pursuant to said agreement Sullivan foreclosed the mortgage, plaintiff refrained from setting up her counterclaim for $10,922.87 and permitted Sullivan to take judgment against her for the whole amount of his note, to wit, the sum of $14,922.87, and likewise permitted him to cause the premises to be sold at foreclosure sale, refrained from bidding on said property and allowed Sullivan to buy the same in his own name and take a deed therefor; that after said foreclosure sale plaintiff continued to reside upon and remain in possession of said premises and in accordance with the terms of their agreement Sullivan leased her the premises for four hundred dollars a year, which amount she paid him up to the time of his death. It is then further averred that had it not been for the promises and agreements of Sullivan that in the event of plaintiff not pleading her setoff of $10,922.87 against his note of $14,922.87 in said foreclosure proceedings, he would devise and bequeath said property to her, plaintiff would have pleaded the said setoff and would and could have secured the four thousand dollars necessary to pay off the indebtedness due Sullivan, and thereby retain the whole title of the property in herself; that said promises, statements, and agreements made by Sullivan to and with plaintiff were fraudulently and deceitfully made by him

and were made for the purpose of wronging, cheating, and defrauding plaintiff, and were made without any intention of performing them; that by reason thereof said judgment of foreclosure was wrongfully and fraudulently obtained and legal title to the property acquired by Sullivan; that plaintiff did not discover the fraud and deceit practiced upon her by Sullivan until after his death on the 22d of September, 1903; that plaintiff is willing and now offers to pay defendants the sum of four thousand dollars, the amount due to said Sullivan at the time of the settlement between them on the 22d of February, 1899, and to do all other things that a court of equity may require in said matter. The prayer of the complaint was for an order of court bringing in as parties defendant the devisees under the will of Sullivan, whose names are set forth in the complaint, and for a decree of court annulling and vacating the judgment and decree obtained by Sullivan in said foreclosure suit; annulling and vacating the foreclosure sale and deed obtained thereunder by Sullivan; that it be adjudged defendants hold said property in trust for plaintiff; that they be required to convey the same to her and that her title to said property be quieted. This amended answer was filed on the fifteenth day of March, 1906, within three years after the death of Sullivan and the alleged discovery of the fraud claimed to have been practiced on plaintiff by him in the matter of the foreclosure proceedings.

Defendants demurred to this portion of the amended answer on the ground that it did not state facts sufficient to warrant the relief prayed for, and the court having sustained the demurrer, the main question on this appeal is as to the correctness of that ruling.

The views taken by the trial court, as appears from its written opinion on the subject, was, first, that the judgment sought to be set aside was conclusive on the parties; that the facts recited in the amended answer did not show that any fraud or imposition was practiced on the court in the foreclosure suit; that the judgment entered was satisfactory to the defendant, and if she saw fit to rely upon the verbal promises of the plaintiff in that action, and which were subsequently broken, this would not constitute fraud on the court such as would justify a court of equity in a separate action in setting aside the decree of foreclosure; second, that the facts

set forth in the amended answer did not change the case in any material aspect from that passed on by this court on the former appeal referred to; that the issues now presented in the amended answer were practically the same as presented in the original complaint, and that the rule of "the law of the case" should be applied.

None of these views are tenable. The view that the judgment sought to be set aside was conclusive on the parties, or could not be set aside because of any of the reasons assigned by the trial court in its opinion, is based on the theory that the fraud charged in procuring it was fraud entering into the obtaining of the decree itself, which, under the authorities, could not be asserted to annul it, and was not what is denominated extrinsic or collateral fraud, which will always warrant a court of equity in relieving from a judgment procured through it. But we think that under the authorities there can be no doubt that the fraud alleged was of an extrinsic character. The rule is well settled in this state as to when equity will or will not relieve a party from the effect of a judgment claimed to have been obtained by fraud. The rule is that it will not relieve when the fraud charged relates to matters upon which the judgment was regularly obtained and where an opportunity was given to the party against whom it was entered to contest the matters in issue, or present any defense which was available; fraud which was directed to or bore upon the claim or issue which was before the court for determination, as when a judgment is entered upon a fraudulent claim, or is procured by false testimony, where the party had an opportunity to be heard as to these matters. This is the rule laid down in *United States* v. *Throckmorton,* 98 U. S. 61, denying the right to relief when the fraud is of that character, and is the rule followed and applied in this state in the cases of *In re Griffith,* 84 Cal. 107, [23 Pac. 528, 24 Pac. 381], and *Pico* v. *Cohn,* 91 Cal. 129, [25 Am. St. Rep. 159, and note, 25 Pac. 970, 27 Pac. 537]. This rule, however, has no application to extrinsic or collateral fraud, which is defined to be "actual fraud, such that there is on the part of the person chargeable with it the *malus animus,* the *mala mens* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him." (*Patch* v. *Ward,* L. R., 3

Ch. App. 207.) In the Throckmorton case the supreme court of the United States, after laying down this general rule to which we have referred, declares what constitutes collateral fraud and the right of a party to be relieved from a judgment obtained through it. It is there said: "There is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side; these, and similar cases which .show that there has never been a real contest in the trial or hearing of the case, are reasons for which a suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. (See Well's Res Adjudicata, sec. 499; *Pearce* v. *Olney,* 20 Conn. 544; *Wierich* v. *De Zoya,* 7 Ill. 385; *Kent* v. *Ricards,* 3 Md. Ch. 392; *Smith* v. *Lowry,* 1 Johns. Ch. 320; *De Louis* v. *Meek,* 2 G. Greene, (Iowa) 55, [50 Am. Dec. 491].) In all these cases, and many others which have been examined, relief has been granted on the ground that by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court."

All the matters stated in the exceptions referred to in that case constitute extrinsic or collateral fraud for which equity will relieve from a judgment obtained thereby. Such fraud operates not upon matters pertaining to the judgment itself, but to the manner in which it is procured. It will be observed that the principal ground upon which equity affords relief, as announced in the Throckmorton case, is that by reason of the fraud practiced on the plaintiff against whom the judgment was obtained, there was no adversary trial of the issues in the action; that he was prevented through such fraudulent act of his adversary, and without any fault on his own part,

from presenting a meritorious defense to the action brought against him.

Now, taking the affirmative allegations of the amended answer as true (which, of course, the demurrer admits them to be), they present a clear case of fraud practiced by Sullivan on plaintiff, calling for the interposition of equity to relieve her from the judgment thereby obtained by him against her. In fact, when we bear in mind the rule in the Throckmorton case as to what character of fraud constitutes extrinsic fraud, it is really a waste of time to endeavor to show that the fraud alleged by plaintiff in her pleading is of the character of extrinsic fraud that warrants relief. Plaintiff had a meritorious defense in the nature of a conceded setoff against the greater part of the indebtedness due from her to Sullivan under the note and mortgage, which she could and would have interposed in any action brought by him to foreclose it; having this setoff, admitted by him to be valid, she was in a position, by payment to him of the balance due him, to relieve her property from his entire mortgage claim, and alleged that, in the event she did none of these things, but would let him foreclose for the entire amount due on the promissory note, he would later make a testamentary disposition of the property in her favor. It is alleged that her failure to interpose the setoff against his claim in the foreclosure suit, and to avail herself of the plea of the statute of limitations against a portion of his claim was solely due to reliance on his promises and agreements, and it is further alleged that he made these promises and agreements with intent to prevent her from interposing those defenses to it, or to discharge it by payment of the balance due him; that he made them without any intention of keeping them when they were made; that he did not keep them, and that they were made solely to secure the legal title through foreclosure proceedings of the mortgaged premises. The actual fraud practiced on the plaintiff by Sullivan consisted in obtaining her consent to refrain from interposing defenses to his claim, upon a promise and agreement made by him without any intention on his part of performing it. (Civ. Code, sec. 1752, subd. 4.) These allegations which we have recited show a clear case of fraud in the procurement of the judgment; extrinsic fraud practiced upon her by Sullivan whereby she was, without any

fault on her part, prevented from interposing a valid defense to the greater portion of his claim. They present a case where a party, having a good defense to an action, has been prevented by the fraud of her adversary from asserting it, and a judgment obtained against her, which in good conscience should not be permitted to stand; a case within the rule announced in the Throckmorton decision and in the cases of *Kelly* v. *Kriess*, 68 Cal. 210, [9 Pac. 129], and *California Beet Sugar Co.* v. *Porter*, 68 Cal. 369, [9 Pac. 313], respectively, where the doctrine of the Throckmorton case is approved and applied to sustain complaints to set aside judgments obtained under circumstances showing extrinsic fraud in their procurement, in no respect different in principle from the showing made by the amended answer of the plaintiff in the matter at bar.

Neither is there any merit in the proposition that the rule of the "law of the case" governs. While some of the facts alleged in the original complaint on review before this court in the former appeal are alleged in the amended answer, additional facts are alleged in the latter which were not set forth in the complaint and which materially changed the aspect of the two pleadings. The complaint involved in the former appeal contained no allegations of fraud. It set forth facts by which it was claimed that an agreement was made between plaintiff and Sullivan that he should devise the property to her by will and sought the specific performance of the contract. The present answer charges actual fraud in the procurement of the judgment against plaintiff and seeks relief from it. While some allegations of fact are common to both pleadings, additional allegations are contained in the amended answer, presenting a different cause of action from that set forth in the complaint involved on the former appeal and calling for entirely different relief. The rule of the "law of the case" is only applicable where the same matters which were determined in the previous appeal are involved in the second appeal. While a judgment rendered upon the sustaining of a demurrer to a former complaint will be a bar to another action based upon the same allegations of fact, yet where the facts are different and present different questions of law, as they do here, no such bar can be asserted. (*Newhall* v. *Hatch*, 134 Cal. 269, [66 Pac. 266].)

In addition to the above points, it is insisted by counsel for respondent that the amended answer contains no statement of the date of the judgment sought to be set aside and annulled, or of the court in which it was rendered. This is true, but it cannot be said that failure to definitely allege these matters rendered the complaint insufficient. The complaint alleged as a fact that the judgment attacked was rendered. Presumably it was rendered in the superior court of Glenn County, where the mortgaged property affected by it is situated and where this action is brought. In any event, absence of such particular averments are not sufficient to warrant sustaining a general demurrer. Such defects could readily have been supplied by amendment, and want of them should have been taken advantage of by special demurrer. However, it is quite apparent that they were not taken into consideration at all by the trial court in disposing of this demurrer. It was evidently disposed of on broader and more vital grounds; those which were stated in the opinion of the trial court and which we have heretofore discussed.

We have discussed all the points urged in support of the ruling upon the demurrer, and do not think any of them are tenable or that the action of the trial court in sustaining it was correct. On the contrary, we think that within the authorities and principles to which we have referred, the matters set up make a showing of fraud perpetrated by Sullivan sufficient to invoke the interposition of a court of equity to relieve plaintiff from the judgment thereby obtained against her.

Much discussion is had in the briefs as to constructive trusts; that Sullivan occupied the relation of a trustee for plaintiff as to this property under his acquirement of the legal title through the alleged fraudulent judgment and proceedings under the foreclosure sale. We perceive no reason for entering into a discussion of that subject here. The trial court as a court of equity having control of the entire subject-matter of the controversy between the parties can do entire justice between them and to the fullest extent. All that the plaintiff asks is that she be permitted now to assert against this fraudulent judgment the setoff which she was originally precluded from interposing against the claim of Sullivan in the foreclosure proceeding upon which it was based, and that

she be permitted to pay any balance which Sullivan was entitled to at the date when she offered to procure and pay such balance; and upon doing so, that she be restored to her legal title in the property. If the court should find that the fraud as alleged was practiced upon her in procuring the judgment and that she had a meritorious defense of setoff against the mortgage claim at that time, the matter would be of ready solution. But, in order to do complete justice, there should be an equitable adjustment between the parties, not only as of that time, but also of all matters from that period down to the entry of a decree in favor of the plaintiff in this case, if one should be awarded in her favor. If such a decree were awarded, it would be necessary to make a complete adjustment of all matters between the parties so that the dispute between them would be finally ended. In the event of such a decree we think an equitable adjustment would be to allow the estate of Sullivan for whatever taxes Sullivan or his legal representatives have paid on the lands involved, less what would have been the mortgage tax, together with interest on the amount which would have been due him under the terms of the promissory note and mortgage, had the setoff of the plaintiff been deducted when its amount was agreed on between them. As to plaintiff, she should be allowed a credit to the extent of her payments to Sullivan under her alleged lease from him. If it should develop that an equitable adjustment of any other matters between the parties should be had, they can readily be made on the theory upon which we have suggested the above adjustment, namely, that the mortgage held by Sullivan be treated as still a valid lien for the balance due him, and the plaintiff considered as the mortgagor properly retaining possession of the mortgaged premises.

If the court should find in favor of the plaintiff, all matters involved being adjusted on the basis above indicated, the decree should provide for the payment into court for the estate of Sullivan, within a reasonable time to be designated in the decree, of the amount found due from plaintiff; that upon such payment the judgment of foreclosure against her be vacated and set aside, and the commissioner's deed conveying the legal title in the property to Sullivan be annulled; that the title of plaintiff to said property be quieted and requiring the defendants to convey said premises to plaintiff,

or in default thereof, that a commissioner be appointed by the court to do so; that in the event of a failure on the part of plaintiff to make such payment into court within the time designated, that her bill to set aside the judgment be dismissed and her prayer thereof for relief against the judgment be denied.

Now, as to the points made in the bill of exceptions accompanying the appeal from the judgment. There is only one which requires consideration, and it arises under the following circumstances. After the trial court had sustained the demurrer of defendants to that portion of the amended answer under which her claim for affirmative relief for judgment was based, the cause went to trial upon the cross-complaint of defendants and the answer of plaintiff thereto. The cross-complaint which was to quiet title against plaintiff, contained the usual allegations, among others, that plaintiff claimed an interest adverse to defendants in it and was in possession and that her claim and possession were wrongful and without right. The answer of plaintiff denied the ownership of defendants or their right to possession and asserted ownership of the property in plaintiff and that she was in possession by virtue of such ownership. Upon the trial it was admitted by counsel for plaintiff that the legal title to the property involved in the action vested in John Sullivan under the commissioner's deed in the foreclosure proceedings against plaintiff, and the deed being put in evidence, defendants rested their case. Plaintiff moved for a nonsuit on the ground that while defendants had shown the legal title to the property to be in themselves, they had not shown they were entitled to possession. The motion was denied, and it is urged that this ruling was erroneous. There is nothing in the point. It was not necessary for the defendants to prove any right of possession independent of the right thereto which the law presumed from their showing that the legal title to the property vested in them. The principal and controlling issue in an action to quiet title is as to the ownership of the property—who has the paramount title. When this was shown to be in the defendants through the conveyance to Sullivan, the law raised a presumption of the right to the possession being in them as holders of the legal title, and hence, at least, a *prima facie* case in their favor was made out against the plaintiff. (*Los*

CLII Cal.—11

*Angeles County Bank* v. *Raynor,* 61 Cal. 145; *Reilly* v. *Wright,* 117 Cal. 77, [48 Pac. 970].)

In presenting her case plaintiff endeavored to prove a lease of the premises in controversy made by Sullivan in his lifetime to her. An objection to the introduction of the evidence, on the ground that no lease was pleaded, was sustained. Immediately the plaintiff moved to be permitted to amend by setting up the lease, which was denied. Both rulings are assigned as error. As this case is to be remanded and a new trial will have to be had, the court will doubtless permit the amendment, so there is no necessity for prolonging this opinion by a consideration of these assignments of error.

This disposes of all the matters presented on this appeal. As the court erred in sustaining the demurrer to that portion of the amended answer under which plaintiff sought affirmative relief from the judgment entered against her in the foreclosure suit, the judgment herein appealed from is reversed, the cause remanded and the lower court directed to set aside the order sustaining such demurrer, and to enter an order overruling the same.

McFarland, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.