[S. F. No. 13444.  In Bank.—July 23, 1931.]

OSCAR BERNHARD, Appellant, v. CHARLES A. WAR-
ING et al., Defendants; ANNIE S. McGINERTY,
Respondent.

H. M. Anthony for Appellant.

Raymond D. Williamson for Respondent.

SEAWELL, J.—Appeal from a decree quieting title of respondent, Annie S. McGinerty, cross-complainant in an action brought by appellant to quiet his title to lot No. 3, block 11, as per map of the property of City Land Association, filed for record August 24, 1870, in books "C" and "D" of maps, page 11, in the office of the recorder of the city and county of San Francisco. The situs of said lot is in the locality of the Ingleside race-track and it has, together with its companion, lot 4, a frontage on Garfield Street. Said lots are each 25x100 feet and were held and regarded as one piece or parcel until the present controversy arose as to the ownership of lot No. 3. Said lots were, on August 20, 1870, conveyed by a grant, bargain and sale deed, according to the map of said City Land Association, by F. L. A. Pioche and L. L. Robinson to George T. Schulz, father of respondent Annie S. McGinerty, and George F. Schulz. On April 4, 1899, George T. Schulz conveyed said lots by gift deed to his wife, Margaret Schulz. On February 28, 1906, Margaret Schulz conveyed said lots to her son, George F. Schulz. On October 14, 1913, George F. Schulz, by a grant, bargain and sale deed, conveyed said lots to his

sister, Annie S. McGinerty, respondent herein. Said George T. Schulz died within a period of five months thereafter.

Appellant asserts ownership of title by virtue of a judgment procured by *George R. Woods* v. *All Persons,* and entered in the Superior Court of the City and County of San Francisco, August 20, 1913, as provided by an ''act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records''. (Chap. LIX, p. 78, Stats. 1906 (Ex. Sess.), and Stats. Amendatory thereof.)

In the presentation of his case appellant offered in evidence the judgment-roll and papers in the case of *Woods* v. *All Persons, etc.,* and also a deed from George R. Woods to E. R. Zion, dated August 25, 1914, and a deed from E. R. Zion and Clarice D. Zion to Oscar Bernhard, appellant herein, dated October 16, 1924.

By her second amended answer respondent denied appellant's asserted claim to title and pleaded her deraignment of title as above set out. She further alleges that the basis of the claim of appellant has its only foundation in the fact that said lot No. 3 was erroneously and falsely included in the inventory of the estate of one McCann and was listed in said estate as of no value and was distributed as the property of said estate to Rose J. Shevlin and Catherine McCann, presumably heirs of said decedent McCann, and that on December 27, 1912, said Rose J. Shevlin and Catherine McCann deeded said lot to George R. Woods—appellant's source of title —and that said Woods, well knowing that he had received no title or interest in or to said lot by said deed nevertheless instituted, four days thereafter, to wit, December 31, 1912, said all persons action; that with the purpose of making less likely the chance of George F. Schulz, who was named in said complaint as a known owner and claimant of an interest in said lot, discovering the design and purpose of said Woods to obtain without his knowledge said lot No. 3, he, Woods, included approximately fifty or more other lots, pieces and parcels of land in said complaint and in the accompanying affidavit required by law. Said answer further alleges that said George F. Schulz was a person well known to said Woods as a resident of the city and county of San Francisco and could have been personally served in the

city of his residence, but said Woods purposely and deliberately failed, omitted and refused to serve said George F. Schulz with summons, complaint or affidavit, and said Schulz had no knowledge of the pendency of said action or of Woods' claim of title to said property; that the residence of said George F. Schulz was correctly listed in the city directory of said city of San Francisco in said year 1912, and that he and his father's family had been the owners of and in actual possession of said lot since 1870 continuously to the day of suit, and that he was well known to the neighboring land owners as the owner of said lot, and that his presence could have been easily ascertained by reasonable inquiry; that the plaintiff in said all persons action did not post or cause to be posted a copy of the summons on said premises or lot No. 3, and that neither said George F. Schulz nor respondent herein had any knowledge of the asserted claim of appellant or his predecessors to any interest in said lot until the instant suit was brought and summons served therein.

It is further averred that respondent and her predecessors in interest have paid all taxes and assessments laid upon said lot No. 3 and that appellant has never offered to refund any of the moneys so paid on account of taxes and assessments; that respondent's predecessor erected a building on said lot and actually resided thereon for several years without objection on the part of appellant, his predecessor in interest, or anyone whomsoever.

Appellant demurred to the second amended cross-complaint on the ground that it did not state facts sufficient to constitute a defense to his said action, and on the further ground that said second amended answer and cross-complaint were barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure.

The complaint in the instant case was not filed by appellant until December 1, 1924, more than eleven years after the entry of the all persons decree, and summons did not issue thereon presumably until some time thereafter, as the record shows that the respondent filed her answer August 31, 1925. Appellant's chief point for reversal is that respondent did not raise the issue of fraud in the procurement of the judgment in said all persons action until approximately twelve years after said decree was signed, as

shown by her cross-complaint herein. A further ground of objection is that the allegations of fraud are predicated upon information and belief, the rule being that it is not sufficient to allege fraud or its elements upon information and belief unless the facts upon which the belief is founded are stated in the pleading. Another ground of objection urged by appellant is that the title to said lot No. 3 stood in the name of George F. Schulz, respondent's grantor, at the time said all persons decree was signed and the conveyance to respondent was not made until approximately two months thereafter, and therefore she not being a party to the suit in which said decree was granted, none of her rights were affected thereby.

At the time said lots were deeded to George F. Schulz by his mother, to wit, February 28, 1906, they were unfenced and unimproved. In fact, the district in which they were situate was an outlying, unimproved portion of the city of San Francisco. Following the fire of 1906, said Schulz built a small board house or ''shack'', as it was called, 22x24 feet on lot 4, and dug a well on lot 3, and inclosed the whole area with a cheaply constructed fence. He actually resided on said lots for a period of several years, the year of his removal being somewhat uncertain, but it was not earlier than 1908. The fence having become dilapidated, he latterly caused it to be removed. Said small house or shack constructed by George F. Schulz was sold by respondent in 1918 to a neighboring land owner and subsequently removed by the purchaser from said premises.

The judgment is attacked on the ground of extrinsic fraud, and while many of the allegations are made upon information and belief, the facts and circumstances as pleaded give rise to inferences which are sufficient to support a pleading sounding in fraud. Respondent's immediate predecessor in interest, a brother, lived only about five months after the decree was signed, and of course his testimony was not available in an action involving his ownership of said lots brought by an adversary claimant ten years after the passing of two important events, to wit, the execution of respondent's deed by George F. Schulz and his death. Moreover, the ownership of the lots in controversy originated in the father of claimant some forty-three years before the title to one of said lots was questioned by the all

persons proceeding, while the title to the companion lot was not challenged at all. It is not explained in the case why lot No. 4 was not also included in said action, as both are held by the same tenure.

As a matter of family history said lots, beginning with the ancestor, have passed from father to mother and thence to son and finally to daughter, as if in obedience to the law of succession, and remained, so far as proprietorship was exercised by anyone, under the control of the successive members of the ancestor's family through a period of more than fifty years. The evidence addressed to the issue of fraud could only come from the living member of the family in support of and in amplification of such facts as were known to her and third parties, which were corroborated by independent facts and circumstances sufficiently persuasive to sustain the decree rendered in her favor. But aside from anything here said as to the allegations and proof based on information and belief, the case being one of extrinsic fraud is proved by documentary record evidence. No claim is made that George F. Schulz was personally served with process of any kind. Respondent in attacking the all persons judgment offered evidence tending to show that no copy of the summons was posted on the premises. Said record did not contain an affidavit that summons had been posted as required by law, whereupon appellant applied to the court for relief and the court ordered that the affidavit of posting of Herbert S. Marron, dated the twenty-third day of June, 1926, be filed *nunc pro tunc* as of the date February 20, 1913. Respondent produced several persons who resided upon near-by lots, one of whom took more than a casual interest in the Schulz lots, all of whom testified that at no time during the period covered by the affidavit did they or any of them observe a notice, copy of summons or paper of any kind posted upon the Schulz lots. Their opportunity for observation and the likelihood of being attracted by such a notice had any been posted was sufficient to convince the trial court that none was posted. There is nothing so inherently improbable in their testimony in the light of the situation described by said witnesses as would justify a reviewing court in minimizing or discrediting their testimony. If the omission to post a copy of the summons was fraudulent, as alleged in the

complaint and found by the trial court, such wilful omission would constitute extrinsic fraud. (*McGuinness* v. *Superior Court*, 196 Cal. 222 [40 A. L. R. 1110, 237 Pac. 42]), and cases therein cited.

The other major ground upon which appellant rests his appeal is the doctrine that "no person will be permitted to proceed in equity against a judgment or decree to which he was not a party, and which did not at its rendition affect any of his rights. If the parties to an adjudication are satisfied with it, no outside persons will be permitted to intermeddle with it at law or equity . . . So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor will be held void as contrary to public policy and as savoring of the character of maintenance". (*Whitney* v. *Kelley,* 94 Cal. 146 [28 Am. St. Rep. 106, 15 L. R. A. 813, 29 Pac. 624, 625].)

It cannot be presumed that a party who had no notice that a suit had been filed and a judgment obtained against him would be satisfied with such an iniquitous and inequitable proceeding. . If the judgment was fraudulently obtained against George F. Schulz, his deed was valid and his successor in interest would be in a position to maintain her action. We deem it unnecessary to discuss assignments of interest which are designed merely to give the assignee a "bare" or "naked" right to file a bill in equity, but rather make reference to that class of assignments in which the "assignors have some substantial possession and some capability of personal judgment, and not a mere naked right to upset a legal instrument or to maintain a suit". (*Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303, 304]; *Kemp* v. *Enemark,* 194 Cal. 748 [230 Pac. 441].)

In the instant case the respondent produced tax receipts beginning with the year 1908 and continuing to the year of trial—1928—except for the year 1921. No claim is made that all taxes levied prior to 1908 were paid by any person other than respondent's predecessors in interest. Receipts were also introduced showing all payments accruing on account of a district improvement known as the Twin Peaks ridge tunnel assessment, beginning with the year 1914, and ending November 25, 1922, were paid by respondent, and also an assessment for the opening of Byxbee Street. The taxes on lot No. 3 were paid in 1921 by E. R. Zion,

Woods' successor, under the all persons judgment and appellant's grantor herein. Zion was present in court, but did not testify in the case. Respondent called at the tax collector's office to pay the taxes assessed against her lots for that year and was informed by the collector that the taxes on lot No. 3 had been paid by said Zion. She then paid the taxes on lot No. 4, and sought Zion, whom she found in the city hall. Zion refused to give her reasonable satisfaction in connection with the transaction and did not assert that he had paid the taxes on said sole lot. He did not claim to be the owner. Respondent offered to reimburse him on account of said payment and was willing and able at all times thereafter to do so. It is evident that neither Zion nor Woods nor the appellant herein had unshaken faith in the righteousness of the all persons judgment, for none either thereafter or before had paid any taxes or discharged any assessments levied on said lot 3 or had done a single act indicative of a proprietor's right. It is clear that the respondent was somewhat perplexed as to Zion's attitude, as shown by her statement that she hardly understood him. The payment of taxes for the year 1921 was not sufficient alone to constitute notice as to the procurement of a judgment accomplished by fraudulent practices.

Upon the foregoing state of the record it would be a harsh rule that would permit one voluntary payment of taxes, in the light of the history of the transaction as above narrated, to interrupt the peaceable enjoyment of said real property by the respondent. She has at no time abandoned her claim of ownership, which is supported by the equities of the case.

Judgment affirmed.

Shenk, J., Preston, J., Curtis, J., and Waste, C., J., concurred.