[Civ. No. 6050.   Third Appellate District.—January 16, 1939.]

F. H. GODFREY, Appellant, v. JOHANNE F. GODFREY, Respondent.

Burton Briggs Crane for Appellant.

Leo B. Wayland and Hobart W. Gladden for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against him in a suit to set aside a decree of divorce alleged to have been procured by fraud. It is asserted the court was without jurisdiction in the divorce proceeding to dissolve the marriage or to determine title to property rights incident thereto for the reason that the marriage was void *ab initio* because it was contracted in less than one year from the time when defendant's interlocutory decree of divorce from her first husband was rendered. A reversal of the judgment in this case is sought on the ground that the findings and judgment are not supported by the evidence.

The respondent contends that this suit constitutes a collateral attack upon the decree of divorce which was procured without fraud, with the knowledge and consent of the appellant, and that it is therefore final and conclusive against him.

The defendant married Peter Fugleberg in 1905 and lived with him as his wife in South Dakota for many years. In 1923 she went to Los Angeles, where she met and frequently associated with the appellant. He was then unmarried. He had a small sum of money and owned a little farm in Idaho, a part of the proceeds of the sale of which is involved in this action.

With the knowledge and approval of the appellant, the respondent brought suit for divorce in Los Angeles County against her former husband, Peter Fugleberg, with the evident purpose of subsequently marrying F. H. Godfrey. The interlocutory decree of divorce from her first husband was awarded to this respondent February 21, 1924, but the entry of the final decree was inadvertently deferred until December 15, 1934. The appellant was advised and knew he could not lawfully marry the respondent until her final decree was rendered after one year from the granting of the interlocutory decree. Nevertheless, in about a month after the interlocutory decree was entered, he took her in his automobile to Idaho Falls, where they applied for and were refused a marriage license on the ground that her divorce was not complete. They then went to Dillon, Montana, where they procured a license and were married April 30, 1924, after which they lived together as husband and wife for several years. During the years they lived together as husband and wife, she contributed sums of money derived from her separate earnings before their marriage to help defray the household

expenses and to aid in maintaining the appellant's property. Dissensions arose between them. The appellant was desirous of selling his farm to the Idaho Muskrat Corporation for the agreed price of $10,000. The respondent refused to sign the deed to that farm until he provided her with reasonable maintenance. The appellant then agreed to divide equally with her the proceeds of the sale of that ranch. He accordingly executed a written contract to that effect December 27, 1927. The land was then sold and the spouses joined in the deed of conveyance. Two thousand dollars of the purchase price was paid in cash, and divided equally between them. The remaining $8,000 was represented by a promissory note payable to them jointly, on or before April 15, 1930, with 6 per cent interest on deferred payments. The note was secured by mortgage on the property in which the spouses were named as mortgagees. The note and mortgage were drawn in that manner at the specific request of the appellant. The appellant's full share of that note was paid to him. He directed the payment of the balance of that note to the respondent. She received a portion of the interest, but at the time of the commencement of this suit there was due her on that obligation $4,000 and some accrued interest. That money was awarded to her in her subsequent divorce proceeding against the appellant.

In 1930 the spouses returned to Los Angeles. Their differences became irreconcilable. The respondent commenced suit in Los Angeles County for divorce against the appellant on the ground of extreme cruelty. He was personally served with copies of the summons and complaint. He consulted with several lawyers about the case, but employed none of them. He made a personal appearance in the cause, and then permitted judgment by default to be entered against him. The action was regularly tried and determined. Johanne Godfrey was granted an interlocutory decree of divorce against the appellant on the ground of extreme cruelty, on October 2, 1931. She was also awarded costs and counsel fees in the sum of $150, and she was determined to be the owner of the note with a balance of $4,000 and accrued interest unpaid thereon. A final decree of divorce was rendered against this appellant in that action October 5, 1932, dissolving the marriage and confirming to this respondent the award of property mentioned in the interlocutory decree. The appellant was fully informed of all proceedings

in the divorce suit. No objection was made to the allegations of that complaint or to the terms of that decree. No appeal from either decree was taken. The judgment became final and conclusive against him with respect to all the issues therein determined.

This suit in equity was filed March 7, 1935, to set aside the decree of divorce last mentioned and to recover from the respondent the money which she received from the sale of the Idaho farm on the ground that the marriage was void, since it was consummated in less than one year after the respondent's interlocutory decree of divorce was procured from her first husband. It is alleged the respondent deceived the appellant into believing she was legally qualified to marry him; that she fraudulently coerced him into executing the contract for, and in conveying to her, one-half of the proceeds of his Idaho farm; that the Los Angeles court was without jurisdiction to try or determine the divorce suit against him, and that the decree of divorce was procured by fraud and perjury on the part of the respondent.

Mrs. Godfrey answered the amended complaint in this action, denying the allegations of fraud and asserting that she married the appellant in good faith and lived in harmony with him as his wife for several years, believing she had a legal right to marry him in less than one year from the time her interlocutory decree of divorce was granted from her first husband, provided they were married in a state other than California. She denied that she deceived or coerced him into contracting or conveying to her one-half of the proceeds of the sale of his Idaho farm, and she alleged that the appellant at all times had personal knowledge of her exact legal status to marry and of the proceedings in the divorce case against him. The answer further sets up the special defenses of laches, the statute of limitations, and the bar of the final decree of divorce as *res judicata* of the issues in this case.

This cause was tried by the court sitting without a jury. Findings were adopted favorable to the respondent in every particular. Judgment was accordingly rendered against the appellant to the effect that he take nothing by his action. From that judgment this appeal was perfected.

The findings and judgment in this case are adequately supported by the evidence. It satisfactorily appears that the respondent did not deceive or defraud the appellant into

believing she was legally qualified to marry him before her final decree of divorce from her first husband was rendered. Nor did she fraudulently coerce him into making the contract or conveying to her one-half of the proceeds of the sale of his Idaho farm. He was familiar with every detail of her divorce proceeding against her first husband. The court was warranted in assuming from the evidence that he not only encouraged her, but no doubt induced her to procure the divorce from her first husband, so that they might marry. He not only knew when the interlocutory decree was granted against Peter Fugleberg, but he was advised that he could not legally marry the respondent until the final decree was entered after one year from the time of granting the interlocutory decree. He deliberately planned to avoid the law by taking her to another state for marriage, almost immediately after the interlocutory decree was granted. He was present in Los Angeles at a conference between the respondent and her witnesses regarding the divorce proceeding the night before the cause was tried. He was anxious to attend the trial with them, but was persuaded not to do so. When the interlocutory decree was granted it was immediately shown to him and he expressed great pleasure at her success. They planned to leave at once to be married in Idaho or Montana. Just before they left Los Angeles, about a month after the interlocutory decree was rendered, Mr. Carkin, a friend of the appellant told him, "You know she [the respondent] has just got a divorce and you can't legally marry her for a year," to which he replied, "Well we can marry out of the state." They traveled together in his automobile to Idaho Falls, where they interviewed a judge regarding their proposed marriage. He advised them to procure a license. They went together and applied to the county clerk for a marriage license, which was refused with the statement to respondent made in the presence of appellant that "You haven't been divorced long enough to get a license." In spite of that information they subsequently procured a license and were married at Dillon, Montana, April 30, 1924. They lived together as husband and wife and worked for the mutual benefit of both parties for several years. Domestic trouble arose between them. In December, 1927, when he proposed to sell his farm, she refused to sign the deed to the land until he made some provision for her support. He then

made the contract and arranged to convey to her one-half of the proceeds of that sale. She signed the deed and the sale was consummated according to that agreement. They returned to Los Angeles in 1930. Their difficulties became irreconcilable. Evidently with his knowledge and consent, she brought suit for divorce against him on the ground of extreme cruelty. He was served with process and knew all about that proceeding. He permitted judgment by default to be rendered against him. The respondent was granted a divorce against him without objection. No appeal from that decree was taken. It became final and conclusive.

Under such circumstances it does not seem possible the appellant could have been deceived or defrauded by the respondent into believing she was legally qualified to marry him two months after her interlocutory decree of divorce from her first husband was granted. The appellant knew fully as much about her status to marry as she did. He was not susceptible of such fraud or deceit. With the knowledge and warning which he had, he certainly was placed upon inquiry to determine whether she then had a legal right to marry him. He was charged with knowledge of her disqualification to marry him. The finding of the court that he was not deceived or defrauded in that regard is fully sustained by the evidence.

■ For the reasons heretofore stated, the finding of the court that the appellant was not deceived, defrauded or coerced into contracting with the respondent or conveying to her one-half of the proceeds of the sale of his Idaho ranch is also abundantly supported by the evidence. The same is true regarding the finding that that contract and conveyance were supported by adequate consideration. Knowing what the appellant knew regarding the illegality of their marriage, if he doubted the fact that a deed of conveyance of his separate property did not require her signature, he was certainly placed on notice requiring him to seek expert advice on that subject. She had lived and worked faithfully with him as his wife for several years, contributing her own separate funds to their household expenses and to the maintenance of his property. Equitably she was entitled to provision for her support. We are of the opinion the evidence furnishes adequate consideration for that contract and conveyance.

■ There is a presumption that by the execution of the deed to that property, with the accompanying agreement to pay Johanne Godfrey one-half of the proceeds of that sale, with the request for the grantee to make her a joint payee of the note and a joint mortgagee of the mortgage, the grantor intended thereby to convey to her the funds in dispute. (18 C. J. 409, sec. 482.) His conduct estops him from contending that the execution of that contract and the conveyance of that property were void. (*H. W. Wright Lumber Co.* v. *McCord*, 145 Wis. 93 [34 L. R. A. (N. S.) 762, 128 N. W. 873, 50 A. L. R. 807, note, Ann. Cas. 1912B, 92].)

■ We are of the opinion the decree of divorce which was rendered against the appellant is final and conclusive upon all the issues determined thereby; that the Los Angeles court was vested with jurisdiction of the subject-matter and of the parties to that divorce proceeding, and the record in this case is devoid of evidence of any extrinsic fraud exercised by the respondent in prosecuting the cause or procuring the divorce. The final decree of divorce which was rendered against the appellant is *res judicata* of the issues presented in this cause.

In support of the judgment in this case, we must assume the Los Angeles court was vested with jurisdiction to try and determine the divorce proceeding against the appellant. In a collateral attack upon a judgment the jurisdiction of the court over the subject-matter and the parties involved will be presumed unless the contrary appears on the face of the decree. ■ In the present case neither the pleadings, the decrees nor the evidence of that divorce proceeding are before us. They are not included in the transcript on appeal. We must, therefore, assume that the complaint alleges in adequate form a good cause of action for divorce on the ground of extreme cruelty, together with the ownership and right to an award of title to the property involved, and that those issues were determined upon competent evidence favorable to the respondent and properly incorporated in the final decree. That was not a suit for annulment. It was a suit for divorce in the usual form. The appellant was served with process in that action and suffered default after talking with several lawyers about the case. ■ He is now estopped from challenging the form of that action, the sufficiency of the evidence or the conclusiveness of the decree,

except for extrinsic fraud. Even though it be conceded the marriage was void *ab initio* because the respondent was not an unmarried woman when it was consummated, the appellant is estopped by his conduct from disputing the validity and genuineness of the marriage.

The present case presents no evidence of extrinsic fraud which will justify a court of equity in setting aside the decree of divorce. ██ The rule is thoroughly established in an unbroken line of authorities that a collateral attack upon a judgment or decree may not be sustained upon evidence of mere intrinsic fraud such as the presenting of perjured testimony or forged documents. Extrinsic fraud, which alone will warrant a court of equity in setting aside a judgment or decree, consists of such false representations as will prevent a real trial of the cause upon the merits of the issues involved, like the conduct which may induce an interested party to refrain from appearing or participating in the trial, a failure to serve timely notice of the hearing, or acts preventing the presence at the trial of material witnesses. (*Ringwalt* v. *Bank of America,* 3 Cal. (2d) 680, 684 [45 Pac. (2d) 967]; *Flood* v. *Templeton,* 152 Cal. 148 [92 Pac. 78, 13 L. R. A. (N. S.) 579]; *Clavey* v. *Loney,* 80 Cal. App. 20, 25 [251 Pac. 232]; *Jeffords* v. *Young,* 98 Cal. App. 400, 404 [277 Pac. 163]; 9 Cal. Jur. 748, sec. 101; 17 Am. Jur. 373, sec. 455.)

██ When the alleged fraud or coercion is of such nature that it may reasonably be presented to the court at the trial so as to afford full and fair protection to the rights of the interested parties and they fail or neglect to avail themselves of that opportunity, a court of equity will not disturb the judgment rendered under such circumstances, but will leave the parties in the position in which they placed themselves. (*Hendricks* v. *Hendricks,* 216 Cal. 321 [14 Pac. (2d) 83]; *Estate of Bell,* 153 Cal. 331 [95 Pac. 372]; *Short* v. *Short,* 106 Cal. App. 210 [288 Pac. 1111]; 9 Cal. Jur. 751, sec. 104; 25 Cal. Law Rev. 79.)

██ When an interlocutory decree of divorce is procured by collusion of the parties to the action, equity will not interfere with the final divorce at the instance of either of the culpable parties. (*Hendricks* v. *Hendricks, supra; Bancroft* v. *Bancroft,* 178 Cal. 359 [173 Pac. 579]; *Bruno* v. *Guglielmo,* 113 Cal. App. 148 [297 Pac. 967]; 15 Cal. Jur. 63, sec. 148.)

In the present case the plaintiff planned and conspired to avoid the California law against marriage within one year of the entry of an interlocutory decree of divorce, and he deliberately arranged the union and participated in the illegal marriage with defendant. He also returned with her to Los Angeles where she promptly instituted a suit for divorce, serving him with summons and complaint therein. With full knowledge of all the issues presented in that divorce proceeding, including the question regarding the illegal marriage, he made a personal appearance in the case and then permitted judgment by default to be rendered against him. The court was warranted in assuming the divorce suit was brought through the connivance of this appellant. His conduct bars him from seeking relief in equity from a situation brought about by his own connivance. ■■■ Assuming that a decree of divorce procured by false testimony may be set aside under proper circumstances on the court's own motion or at the instance of an injured party who is a stranger to the proceeding, still equity will not interfere with such a judgment at the behest of either of the culpable parties. In the absence of evidence adduced at the divorce proceeding, we may not assume the decree was procured on false testimony, or that the decision of the court was not fully supported by the pleadings and the evidence. That decree, is, therefore, final and conclusive, as between the parties to that action, with respect to their legal status. (*Estate of Lee,* 200 Cal. 310, 314 [253 Pac. 145]; *Blumenthal* v. *Blumenthal,* 97 Cal. App. 558, 561 [275 Pac. 987]; sec. 1908, Code Civ. Proc.; 9 R. C. L. 459, secs. 270–272; *Avenbuch* v. *Avenbuch,* 80 Wash. 257 [141 Pac. 701, Ann. Cas. 1916B, 873].) In the Blumenthal case above cited it is said:

"It seems to be the general rule, with respect to final decrees of divorce at least, that as between the parties and privies a decree granting a divorce is conclusive of the existence of the marriage dissolved thereby."

■■■ We are of the opinion this cause is also barred by laches, since with full knowledge of the circumstances the plaintiff acquiesced in the transfer of one-half of the proceeds of the sale of land, without objection, for a period of eight years, and he failed to appeal from the decree of divorce

or to object to the terms thereof for more than four years after the interlocutory decree was rendered.

The judgment is affirmed.

Ross, J., *pro tem.*, and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 16, 1939.