[Civ. No. 17694.   Second Dist., Div. One.   Sept. 27, 1950.]

Estate of JANE STANDING, an Incompetent Person. RAY-
MOND A. NELSON, as Special Guardian, etc., Respond-
ent, v. VENNA BERGGREN, Appellant.

Lindstrom & Bartlett and William C. Bartlett for Appellant.

Marshall Stimson and Raymond A. Nelson for Respondent.

DRAPEAU, J.—By a verified petition filed June 29, 1948, Venna Berggren sought appointment as guardian of her grandmother, Jane Standing, who was then about 90 years of age. It was alleged therein that by reason of "extreme age and senility" said grandmother had "become mentally incompetent, either to care for herself or to manage her property." The usual citation issued directing Jane Standing to appear on July 16, 1948, the day set for hearing the petition.

On said date the citation was filed upon which was endorsed an unverified affidavit signed by Edith I. Allen, sister of Jane Standing, averring that service thereof was made upon the alleged incompetent on July 1, 1948. Two certificates of Dr. Crakow dated July 15, 1948, were presented certifying that Jane Standing was not physically or mentally capable of handling her own affairs, and was "not physically able to endure a court session."

Under section 1233, Probate Code, as then in effect, no testimony was presented at the hearing, but on the basis of the foregoing documents, the court granted the petition and fixed the bond, whereupon Mrs. Berggren qualified as guardian and entered upon her duties as such.

Thereafter, on December 15, 1948, on behalf of Jane Standing, an amended notice of motion to vacate the judgment appointing guardian, together with points and authorities and supporting affidavits, was served and filed. The grounds of said motion were:

1. That no citation was served upon the alleged incompetent within the time prescribed by law prior to the hearing;

2. That the petition "falsely and fraudulently" omitted reference to a second sister of the incompetent residing within the state.

3. That the order was obtained by fraud.

4. That the first physician's certificate was insufficient under Probate Code, section 1461.

Counteraffidavits in opposition to the motion were filed, and after a hearing lasting two days, the court vacated the decree appointing Mrs. Berggren as guardian, having found against her on grounds 1, 3 and 4 of the motion.

This appeal is from such order.

For a reversal of the order appealed from, appellant relies upon the following propositions:

(1) The finding of the trial court that the ward was not properly served with process is neither supported by substantial or by any credible evidence.

(2) The fact that the ward was duly served sustains the order appointing the guardian.

(3) There was no fraud.

(4) The motion for new trial should have been granted.

Among other things, the record reveals that Mrs. Standing owns two adjoining lots in Los Angeles. One is improved with a bungalow in which she lives. The other with a four-family flat building which she rents to tenants. One of these tenants, Jemima G. Stoffel averred by affidavit that she had lived in said building for five years, during which time she saw Mrs. Standing "practically every day"; that Mrs. Standing collected the rents from affiant and other tenants and supervised repairs; and that during June and July of 1948, Mrs. Standing attended to her business; collected rents, went to the bank and grocery stores and performed her usual household duties.

The amended motion to vacate the judgment was supported by several affidavits.

That of Jane Standing, the petitioner, averred that she was not served with copy of the petition for guardianship nor with the citation until after July 16, 1948, the date of the hearing thereof; that she had no knowledge whatsoever of the proceedings for appointment of guardian until she was given copies of the petition and citation during the latter part of July or early August, 1948; that she then conferred with her attorney, Raymond A. Nelson, and handed the papers to him for investigation. She also averred that she was physically able to appear in court on the day of the hearing and had she known about it, she would have been present to oppose the appointment; that no doctor gave her a physical examination prior to the date of the hearing. It was further averred that affiant for the past 38 years had managed her properties: interviewed tenants, collected rents, banked her funds, paid her taxes and other operating expenses as they became due; that she had done all of these things continuously and without interruption "except during the past few months when she had been prevented from doing so by reason of the within proceedings." That prior to July 16, 1948, affiant did her own marketing, made purchases of groceries and other necessities, and prepared her own food. That she "has continued to do

so since the said 16th day of July, 1948, and is doing so as of the date of this affidavit.''

The affidavit of Attorney Raymond A. Nelson was to the effect that he had known Mrs. Standing for four years; that when she needed legal advice she was brought to his home by Mr. Reyes, one such occasion being in June of 1948. That early in August, she came to his home and handed him a copy of the petition for guardianship and citation *re* hearing thereof on July 16, 1948, and informed affiant that ''she had received these papers only a day or two before the day she was at affiant's home''; that he saw Mrs. Standing on several occasions between early August and October 15, 1948, when he took her to the Superior Court at Glendale, and at no time during this period was she physically unable to attend a court session.

Mr. Reyes averred by affidavit that he had been a neighbor of Mrs. Standing for 25 years, helped her with the work around her place, i.e., burning rubbish, mowing lawns, trimming shrubbery, etc., and that during June and July, 1948, he took her riding in his automobile almost every day, at which time she was physically able to be out and to attend to her affairs.

In her counteraffidavit appellant averred that she accompanied her aunt Edith I. Allen to Jane Standing's home on July 1, 1948; that she then and there saw Mrs. Allen ''personally deliver'' to Mrs. Standing copies of the petition and citation; that Jane Standing asked ''what is this?'' to which affiant replied that she was petitioning the superior court to be appointed her guardian and that the matter would be heard in Glendale on July 16, 1948; that after reading aloud to Jane Standing the whole of said petition and citation, the latter stated she was glad that affiant was going to help her by being appointed her guardian, because it would relieve her of a lot of worry. That on July 15, 1948, affiant had Jane Standing brought to her home and told her that ''the hearing comes up tomorrow and I find I may have to take you to court with me. Do you want to go?'' That Jane Standing replied: ''I would rather not but if you need me, I will come.'' That affiant then told her: ''I will try to arrange it so you won't have to.''

Affiant further averred that thereafter she learned of the certificate of Dr. Crakow and was told by her attorney that it was not necessary for Jane Standing to be present at the hearing. That a few days after the hearing, affiant called at the home of Jane Standing and told her about the appoint-

ment, at which time Jane Standing stated: "Well, that's fine, honey."

The affidavit of Mrs. Edith I. Allen corroborates the above affidavit and also avers that Jane Standing "was pleased with the idea that she was going to be taken care of."

At the instant trial, appellant testified that she planned and had Dr. Crakow come to her home the day before the hearing to examine Mrs. Standing; that the latter was there for three or four hours, and the doctor was there about half an hour; that the doctor talked to Mrs. Standing and "held her hand." She further testified as to the unkempt appearance of Mrs. Standing and the unclean condition of her home; and as to the various matters averred in her affidavit hereinabove recited, especially as to the service upon Mrs. Standing of the petition and citation.

Dr. Crakow took the stand and was asked to explain his certificate of July 15, 1948, wherein he stated that Mrs. Standing "is not physically able to endure a court session." He stated that because Mrs. Standing was averse to being examined, he had to make what physical observation and examination he could; that he checked her pulse and found it weak and irregular and that "with her mental condition and physical condition at that time, I did not believe she was in a suitable condition to endure a court session"; that he made an examination as to her mental condition and found a condition of senile dementia which was due to softening of the brain tissue. He examined Mrs. Standing again on December 7, 1948, and found her physical condition slightly improved; that her mental condition was satisfactory at times and then would show memory lapses, confusion and incoherence.

Mrs. Wilson, who frequently visited Mrs. Standing over a period of eight years, testified Mrs. Standing's home was "rather charming," nicely arranged and comfortable, and that she noticed no dust; that Mrs. Standing did her own cooking and was always properly dressed; that she took pride in her personal appearance and when she went out wore a hat and a suitable jacket.

As can readily be seen, the evidence on the question of service was directly conflicting; hence the findings made thereon are conclusive.

In *Brainard* v. *Brainard*, 82 Cal.App.2d 478, 480 [186 P.2d 990], it was held: "The total evidence considered by the trial court upon the motion consists of a volume in excess of 110 pages (here 150 pages). It all represents a body of conflicting

statements by witnesses called to support the contentions of the respective parties. Whatever might be the impression of the appellate court with reference to the inferences and findings which should be drawn from diverse proofs, it is the rule that the findings must be followed in the absence of a clear showing that discretion was abused. (*Trujillo* v. *Trujillo,* 71 Cal.App.2d 257, 260 [162 P.2d 640]; *Cooper* v. *Deon,* 58 Cal. App.2d 789, 790 [137 P.2d 733].) ██ In all matters in which an issue is tried upon affidavits it is the rule that those favoring the contentions of respondent establish not only the facts stated therein but also all facts which may be reasonably inferred therefrom. (*Doak* v. *Bruson,* 152 Cal. 17, 19 [91 P. 1001]; *Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].) ''

██ On the question of fraud, the case of *Sipe* v. *McKenna,* 88 Cal.App.2d 1001, 1004 [200 P.2d 61], is decisive. It was there held:

''A court of equity under proper circumstances will set aside a judgment obtained by fraud. (15 Cal.Jur. § 120, p. 8.) ██ The fraud must be extrinsic and collateral. (*Huron College* v. *Yetter,* 78 Cal.App.2d 145, 149 [177 P.2d 367].) Extrinsic or collateral fraud is defined in the recent case of *Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755], thus (p. 365): 'The fraud which will justify the setting aside of a final judgment by a court of equity must be of such character as prevents a trial of the issues presented to the court for determination. (*Thompson* v. *Thompson,* 38 Cal.App.2d 377 [101 P.2d 160]; *Godfrey* v. *Godfrey,* 30 Cal.App.2d 370 [86 P.2d 357].) Where the fraud practiced is collateral to and outside of court so that a party is, because of such fraud or concealment, effectively deprived of presenting his case or all of his defense, it is extrinsic and equity will give relief . . . (p. 366) to constitute extrinsic fraud, there must have been some representation or concealment by the defendant which prevented the plaintiff from having his day in court . . .' ██ It has long been established that a false affidavit of service constitutes extrinsic fraud. A party is thus prevented from having his day in court. ██ Courts of equity will relieve a party from an unjust judgment rendered against him when, without service of process, either actual or constructive, no opportunity has been given him to be heard in his defense. (*Bernhard* v. *Waring,* 213 Cal. 175, 180 [2 P.2d 32]; *Parsons* v. *Weis,* 144 Cal. 410,

416 [77 P. 1007]; *Herd* v. *Tuohy*, 133 Cal. 55, 62 [65 P. 139]; *Martin* v. *Parsons*, 49 Cal. 94, 100.)''

In *Godfrey* v. *Godfrey*, 30 Cal.App.2d 370, 379 [86 P.2d 357], extrinsic fraud is defined as follows: ''Extrinsic fraud, which alone will warrant a court of equity in setting aside a judgment or decree, consists of such false representations as will prevent a real trial of the cause upon the merits of the issues involved, like the conduct which may induce an interested party to refrain from appearing or participating in the trial, a failure to serve timely notice of the hearing, or acts preventing the presence at the trial of material witnesses. (Citation of authorities.)''

''Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself, but relates to the *manner* in which it was procured.'' (*Deyl* v. *Deyl*, 88 Cal.App.2d 536, 540 [199 P.2d 424].)

The order appealed from is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 26, 1950, and the following opinion was then rendered:

DRAPEAU, J.—Appellant in her petition for rehearing complains that the opinion heretofore filed in this cause failed to pass upon the point that her motion for a new trial should have been granted. The ground particularly urged in support of said motion for a new trial was that of newly discovered evidence consisting of ''admissions by the ward that she had been properly served in time with the original petition and citation.''

■ The purported admissions were made to Maynard R. Shaeffer, a tenant of the ward. A counteraffidavit was to the effect that he and the ward did not get along. An examination of the Shaeffer affidavit reveals that affiant was biased in favor of appellant. It was cumulative in most respects and somewhat impeaching, but was not sufficient to change the result reached on the issue of notice or on the issue of fraud.

As stated in *Scott* v. *Flanagan*, 14 Cal.App.2d 105, 112 [57 P.2d 1382], ''It is a well-established rule that the granting of a new trial rests largely in the discretion of the trial court, and will not be disturbed if it can be upheld upon any ground shown by the record. (*Smith* v. *Royer*, 181 Cal. 165, 166 [183 P. 660].) Where the motion is based upon the ground

of newly discovered evidence it must appear that the evidence is new, material, and not cumulative.''

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1950. Carter, J., and Traynor, J., voted for a hearing.