[Civ. No. 8762. First Appellate District, Division One.—January 19, 1933.]

MARY E. KRONMAN, Respondent, v. ANDREW KRONMAN, Appellant.

Hugh A. McNary and Geo. D. Richey for Appellant.

S. S. Hahn, M. C. Spicer and W. O. Graf for Respondent.

JORGENSEN, J., *pro tem.*—This is an appeal from an order of the court below setting aside the final decree of divorce in this action on the ground that the same was secured by fraud of the defendant.

The plaintiff obtained an interlocutory decree of divorce from defendant by default, on her complaint alleging extreme cruelty. This decree was entered August 3, 1927. Thereafter, on the twenty-sixth day of November, 1930, the plaintiff filed a second action for divorce upon the same grounds of cruelty as alleged in the case at bar, and in addition to the acts alleged in this case added an additional act of cruelty stated to have been committed November 4, 1930. No final decree of divorce had been entered in the case at bar at that time. Plaintiff in the second action procured an order to show cause directed to defendant, requiring him to show cause why he should not pay certain sums as alimony and attorney fees, which order was returnable December 11, 1930.

On the tenth day of December, 1930, the court at the request of the defendant made its final decree of divorce in the case at bar. The decree recited on its face that it was made by the court of its own motion, but it appears clearly by the record and in the affidavit of defendant himself that it was made at his request.

Thereafter, on December 30, 1930, the plaintiff in the case at bar made her motion to set aside said final decree on the grounds that it was obtained by fraud of the defendant, perpetrated upon the court and upon the surprise of the plaintiff. The notice of motion stated it was made under section 473 of the Code of Civil Procedure, and for fraud, it appearing that plaintiff did not discover the fact that said final decree was entered until the hearing to show cause in the second action on December 11, 1930. No oral evidence was submitted at the hearing of the motion, but the evidence in support of the motion consisted of affidavits only and the records of the case. The court granted the motion, and from the order of the court granting the motion the defendant appealed. The affidavits in support of the motion, so far as they relate to this question, are as follows:

Plaintiff's affidavit alleges that on or about July 28, 1928, before a year expired from the entry of the interlocutory decree, the parties resumed marital relations and lived together as husband and wife, as they formerly did, until on or about November 4, 1930, and in addition alleges that an allegation made by defendant in an affidavit filed in said second action, that the parties had not resumed marital relations nor entered into an agreement to do so, and that no reconciliation of any kind or character had been had or effected, was false and untrue.

The affidavit of Ethel Coleman, an acquaintance of both before their first divorce troubles, alleges that on or about the twenty-eighth day of July, 1928, the plaintiff returned to her husband, and from that time on they resumed marital relations and lived together as husband and wife, to affiant's personal knowledge, up to the time defendant was arrested and put in jail, November 4, 1930, and that during all of said time, from the latter part of July, 1928, up until November 4, 1930, the plaintiff and defendant, to the personal knowledge of affiant, occupied the same room, slept in the same bed, and otherwise conducted themselves as husband and wife.

The affidavit of Bessie Allen, a near neighbor, alleges that she helped plaintiff move back to where defendant Andrew Kronman was then residing, on July 28, 1928. Since that time affiant had personal knowledge that the

plaintiff and defendant were living together as husband and wife up to November 4, 1930. Affiant had been at the home of the parties on several occasions, and she knew of her own personal knowledge that they occupied the same room and otherwise conducted themselves as husband and wife.

The affidavit of Cecelie Day alleges that she was a personal acquaintance for ten years and knew the parties very intimately, they having come to her home two or three times a week and on many occasions during that time they would stay all night; that since August 1, 1928, they visited affiant's house on an average of two or three times a week and played cards and on many occasions they would play so late that Mr. and Mrs. Kronman would stay all night, and on each of these occasions they occupied the same room and otherwise conducted themselves as husband and wife, as they formerly did, and since August 1, 1928, up until the date of their last separation, November 4, 1930, the plaintiff and defendant had been living together and holding themselves out before the public as husband and wife.

The affidavit of Fred James and that of Charles West allege that they were acquaintances of both and that the parties lived together as husband and wife, and held themselves out to the public as such.

The defendant filed a counter-affidavit in which he sets forth that there was no reconciliation; that he was not restored to all marital rights, and that their living in the same place was a mere business arrangement to better care for the property of the parties. Defendant contends: (1) That the court had no jurisdiction to set aside the final decree on plaintiff's motion; (2) that the affidavits in support of plaintiff's motion do not set forth facts showing a reconciliation of the parties and a full restoration of marital rights, but set forth only the conclusions and opinions of the persons making them.

There is no merit in the contention that the court had no jurisdiction to grant the motion. The court has inherent power to set aside a decree obtained by fraud, and its right to so act is not derived from section 473 of the Code of Civil Procedure, or limited thereby. (*Williams* v. *Reed*, 43 Cal. App. 425 [185 Pac. 515]; *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 40 A. L. R.

1110].) The mere fact that the notice of motion stated, among other things, that it was made under said section and for fraud does not deprive the court of jurisdiction.

■ One of the important purposes of the law requiring one year to elapse between the entry of the interlocutory decree of divorce and the granting of the final decree is to give the spouses a chance to effect a reconciliation, which the law favors. (*Olson* v. *Superior Court,* 175 Cal. 250 [165 Pac. 706, 1 A. L. R. 1589].) ■ The obtaining of a final decree of divorce, after a reconciliation and resumption of marital relations subsequent to the entry of an interlocutory decree, without notice or knowledge of the other spouse, is extrinsic fraud, not only as to the other spouse, but also in so far as the court itself granting such decree is concerned, since it was effected through concealment from the court in an *ex parte* proceeding of facts which the party requesting the final decree is bound to disclose, and which if disclosed would have rendered improper the granting and impossible the procurement of the final decree. (*McGuinness* v. *Superior Court, supra,* at p. 230.)

"In the consideration of an appeal from an order made upon affidavits, involving the decision of a question of fact, this [appellate] court is bound by the same rule that controls it where oral testimony is presented for review. If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered as established." (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001, 1002], and cases cited.) Therefore, if the affidavits in support of the motion state facts sufficient to establish there was a reconciliation between the parties and a resumption of marital relations, the judgment must be affirmed, and the fact that such facts were denied in defendant's affidavit cannot be considered here.

■ It is a general rule of evidence that a witness or affiant must state facts and not conclusions of fact or opinions. The probative facts must be set forth in an affidavit. It must appear from the facts stated that the ultimate fact may be inferred as true. (1 Cal. Jur. 669; *People* v. *Yoakum,* 53 Cal. 566.)

"The line between a statement of fact accepted as evidential and a statement of conclusion of fact, insufficient

as a matter of evidence is in many cases shadowy and difficult to define. There are tests, however, which assist in distinguishing the one from the other. Where, in relation to a given statement, it is apparent that there is in the mind of the witness an immediate correspondence between the ideas expressed and the realities observed, the statement of such ideas is an evidential fact of the highest character, as the idea is intuitive and represents the reality without conscious reasoning. As observation, however, decreases in value and reasoning increases, the statement becomes of less weight evidentially, until a point is reached where the statement is rejected entirely as evidential, and is branded as a conclusion. In many cases statements which are the result of observation of realities of so complicated a nature as to be beyond the powers of description of an ordinary witness are considered evidential, where they relate to matters of common experience and are in effect the result of an intuitive inference. . . . Again, a statement is not necessarily branded as a conclusion simply because it involves some reasoning. In such case, however, as the element of reasoning increases the weight of the statement as a matter of evidence decreases." (*In re Liquors Seized at Auto Inn,* 204 App. Div. 185 [197 N. Y. Supp. 758, 760].)

■ Whether the parties had become reconciled and resumed marital relations are the ultimate facts to be determined by the court, and not by the conclusion of the plaintiff and her witnesses, and if such affidavits contained nothing more than those statements of ultimate fact they would be insufficient to sustain the order. But the record and affidavits contain probative facts as follows: The parties had been married and lived together as husband and wife previous to the filing of the complaint in this action, and they had lived together, as they formerly did, from July 28, 1928, to November 4, 1930; during all that time they occupied the same room and slept in the same bed; their cohabitation was open and avowed and their friends and people at large were led to believe they were husband and wife, and they held themselves out to the world and deported themselves as such.

■ This is not a case of a single act of sexual intercourse, but a long-continued living together and cohabita-

tion and deporting as husband and wife, and the law presumes that under such circumstances they had become reconciled and had resumed marital relations. (Code Civ. Proc., sec. 1963, subds. 1, 30 and 33; *Estate of Baldwin*, 162 Cal. 471, 490 [123 Pac. 267].)

The affidavit contained sufficient probative facts to sustain the order, and the order appealed from is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.