[Civ. No. 16222.    Second Dist., Div. Three.    Nov. 16, 1948.]

CORNELIUS M. DEYL, Appellant, v. JOSEPHINE V. DEYL, Respondent.

Patrick J. Cooney and Julius N. Blank for Appellant.

Benjamin Elconin for Respondent.

VALLÉE, J.—Plaintiff and cross-defendant appeals from an order denying his motion to set aside an interlocutory decree of divorce.

An action for divorce on the ground of extreme cruelty was filed by plaintiff on June 18, 1945. The complaint alleged that plaintiff and defendant were married in Los Angeles County, California, on February 5, 1945; that they separated on June 1, 1945; that there were two children, the issue of the union. It also contained an allegation respecting community property of the parties. Thereafter defendant filed an answer and a cross-complaint for divorce on the ground of extreme cruelty, alleging the same statistical facts. On April 12, 1946, the cause came on for trial. Both parties were present with their respective attorneys. It was stipulated that the cause be heard as a default on the defendant's cross-complaint. An interlocutory decree of divorce was granted to defendant. It distributed the community property in accordance with a stipulation made in open court and ordered plaintiff to pay defendant $15 a week for the support and maintenance of the two minor children whose custody was awarded to defendant. The interlocutory decree was entered May 15, 1946. No motion for a new trial was made nor was an appeal taken from the decree.

On April 3, 1947, almost a year after the entry of the interlocutory decree, plaintiff filed a notice of motion to set aside, annul and vacate the interlocutory decree upon the ground that it was obtained by fraud on the part of the defendant, in that the marriage between the parties was void *ab initio* because there existed "a prior marriage between Josephine V. Deyl [defendant] and one Alberto Tarzia, and that the said marriage . . . was never annulled, vacated or set aside, nor was any decree of divorce ever entered," which fact was unknown to plaintiff but known to the defendant.

The motion was presented to the court upon affidavits on behalf of plaintiff and counteraffidavits on behalf of defendant. On May 28, 1947, an order was made denying the motion, from which order plaintiff appeals. On June 18, 1947, at the request of defendant, a final decree of divorce was entered. No appeal has been taken from that decree.

■ An interlocutory judgment of divorce valid on its face and regularly entered is subject to attack only in some way provided by law for the modification or vacation of final judgments. It is subject to be vacated on appeal, or on motion for a new trial, or by proceedings under section 473 of the Code of Civil Procedure, or in any other way that may be expressly authorized for the review of final judgments. (*Suttman* v. *Superior Court,* 174 Cal. 243, 244 [162 P. 1032]; *Bancroft* v. *Bancroft,* 178 Cal. 367, 368 [173 P. 585].)
■ When not vacated on appeal, or by motion for new trial, or by motion under section 473, Code of Civil Procedure, it becomes ''a final judicial determination that, as of the date of its entry, the parties were *entitled* to a dissolution of the status of married persons; it is a final judicial determination of the property rights of the parties and of all other matters not suspended until the entry of the final decree,'' final dissolution of the marriage being the only question held in abeyance pending entry of the final decree. (*Borg* v. *Borg,* 25 Cal.App.2d 25, 29 [76 P.2d 218]; *Estate of Hughes,* 80 Cal.App.2d 550, 555 [182 P.2d 253], and cases therein cited.) ■ Independently of section 473, Code of Civil Procedure, however, the court has inherent power, upon motion seasonably made, to set aside a judgment on the ground of fraud, and the same may be exercised after the lapse of the statutory time which limits the entertaining of applications based upon section 473. But in such cases the fraud must be extrinsic, the limitations in this respect being the same as those imposed on the granting of equitable relief to set aside a judgment. (*McGuinness* v. *Superior Court,* 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110]; *Boust* v. *Boust,* 205 Cal. 186, 187 [270 P. 209]; *Thompson* v. *Thompson,* 38 Cal. App.2d 377, 380 [101 P.2d 160]; *McKeever* v. *Superior Court,* 85 Cal.App. 381, 384 [259 P. 373]; *Tomb* v. *Tomb,* 120 Cal. App. 438, 441 [7 P.2d 1104]; *Kronman* v. *Kronman,* 129 Cal. App. 10, 13 [18 P.2d 712].) ■ In *Godfrey* v. *Godfrey,* 30 Cal.App.2d 370, 379 [86 P.2d 357], extrinsic fraud is defined as follows: ''Extrinsic fraud, which alone will warrant a court of equity in setting aside a judgment or decree, consists of such false representations as will prevent a real trial of the cause upon the merits of the issues involved, like the conduct which may induce an interested party to refrain from appearing or participating in the trial, a failure to serve timely notice of the hearing, or acts preventing the presence at the trial of material witnesses. (*Ringwalt* v. *Bank*

*of America,* 3 Cal.2d 680, 684 [45 P.2d 967]; *Flood* v. *Templeton,* 152 Cal. 148 [92 P. 78, 13 L.R.A.N.S. 579]; *Clavey* v. *Loney,* 80 Cal.App. 20, 25 [251 P. 232]; *Jeffords* v. *Young,* 98 Cal.App. 400, 404 [277 P. 163]; 9 Cal.Jur. 748, sec. 101; 17 Am.Jur. 373, sec. 455.)'' Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself but relates to the *manner* in which it was procured. (*Flood* v. *Templeton,* 152 Cal. 148, 156 [92 P. 78, 13 L.R.A.N.S. 579].)

The controlling question is whether plaintiff has made a showing of extrinsic fraud which required the trial court to set aside the interlocutory decree. His motion and the affidavits in support thereof set forth the following: that in 1936, defendant and one Alberto Tarzia entered into a marriage in Italy; that shortly thereafter they came to the United States, living together at various places, including Red Bank, New Jersey, until November of 1938, when Tarzia was deported to Italy, having become a public charge; that ''at some early date in the year of 1945,'' defendant ''succeeded in communicating with her mother-in-law, Signora Rosina Tarzia'' in Italy; that on February 5, 1945, when plaintiff and defendant applied for a marriage license, defendant falsely stated she was ''single'' and that it was her ''1st'' marriage; that the statements were made ''knowingly and for the purpose of misleading, deceiving and defrauding the plaintiff'' and the people of the State of California; that defendant received a letter from the mother of Tarzia, written under date of March 20, 1945, stating that Tarzia was alive and in the Italian Navy; that defendant withheld this information of her husband's existence and whereabouts from plaintiff; that ''at no time, nor at any stage of the proceedings'' did defendant reveal that the marriage between the parties was void, but continued to ''wilfully and knowingly'' suppress the information ''for the purpose of misleading and defrauding the Court and the plaintiff.''

In her counteraffidavit defendant admitted the marriage with Alberto Tarzia. She stated that while visiting in Italy with her mother in 1936, she entered into a marriage with Tarzia in Roicella, Italy; that they never lived together as husband and wife; that immediately after the marriage ceremony she left for Naples, and on December 31, 1936 sailed for New York City; that Tarzia did not accompany her; that in September, 1937, Tarzia arrived in New York City and sought to establish his residence with defendant and her mother, who were then residing in Red Bank, New Jersey;

that because of his ill health, her mother took pity upon him and he was permitted to remain at their home for about two months; that since the marriage she never cohabited with Tarzia, nor lived "with him as man and wife"; that in 1938, she became acquainted with plaintiff who "knew all about" the marriage; that in November, 1938, Tarzia, ill with tuberculosis, was deported to Italy because he had become a public charge; that at the time he left for Italy both plaintiff and defendant "appeared at the pier in New York City" and saw him off; that in the latter part of 1938, at the behest of plaintiff who advised her that she should not return to her parents but should come and live with him, she did so, and while so cohabiting together two children were born to the parties; that in 1942, she and the two children left plaintiff and came to Los Angeles, California; that in 1943, plaintiff followed her to Los Angeles and they again lived together as husband and wife; that after considerable persuasion and pleading on her part plaintiff finally agreed to enter into a marriage for the sake of their children; that in January, 1945, she conferred with an attorney (naming him), and advised him that she had not heard from Tarzia since 1938, or from any of his friends or relatives concerning his whereabouts, and that she believed him to be dead; that the attorney advised her that, under the circumstances, she could enter into a valid marriage with plaintiff; that thereafter when the parties applied for a marriage license she asked plaintiff how she should answer the questions and upon his advice stated that she was "single" and that it was her "1st" marriage; that at the time she answered the questions she was of the honest opinion that she was legally "single" and that this was her "1st" legal marriage. She further averred that plaintiff knew and was fully advised at all times of her marriage to Tarzia; that plaintiff, knowing all of the circumstances of the marriage, entered into a marriage with her; that she was of the honest opinion that she did not require any legal dissolution of her former marriage at the time she entered into the marriage with plaintiff; that all of these facts were within the knowledge of the plaintiff "at the time of the trial of this case, on or about April, 1946," and that he could have raised all of the issues pertaining to the marriage "at the time of the trial" of the case; that by reason of the foregoing facts plaintiff should be estopped from attacking the legality of the marriage.

Two other affidavits were filed on behalf of defendant,—one by her mother, Marianna Raciti, and the other by her sister, Vicki Raciti. Both affidavits corroborated defendant's allegations that plaintiff, since 1938, had been fully advised of, and knew all about, the circumstances surrounding defendant's marriage to Tarzia; that he frequently discussed the matter and stated he knew all about the marriage; that on several occasions they heard plaintiff say he would prosecute defendant for bigamy and would make as much trouble for her as he could. Mrs. Raciti, in her affidavit, stated that in December of 1944, she received a letter from Maria Tarzia, an aunt of Tarzia, from Roicella, Italy, stating "in substance that she [Maria Tarzia] was informed that Alberto Tarzia went to sea on some ship while in the service of the Italian Navy and that none of the men aboard that ship had ever returned and that she believed that Alberto Tarzia was lost at sea"; that immediately thereafter, and in December, 1944, she read this letter to plaintiff and defendant; that since December, 1944, she "believed and does now believe that the said Alberto Tarzia had died some time prior to December, 1944." The sister, Vicki Raciti, also stated that in December of 1944, she learned of the death of Tarzia from her mother, that "she has at all times been of the opinion that the said Alberto Tarzia was missing since December of 1944 and that he was dead," and that she had received no other information as to the whereabouts of Alberto Tarzia.

In a supplemental affidavit filed by plaintiff he stated that he had "long suspected" that defendant had a husband previous to their marriage and that on numerous occasions he had accused her of being "bigamously married" to him, but that he has never been able to prove it; that on one occasion he went to the district attorney's office and complained but was told he did not possess sufficient evidence and that there was a vast difference between suspicion and knowledge; that "on the basis of this" denies the statements contained in defendant's affidavit that he has long known of her marriage to Tarzia.

Equity will not relieve a party "when the fraud charged relates to matters upon which the judgment was regularly obtained and where an opportunity was given to the party against whom it was entered to contest the matters in issue, or present any defense which was available; fraud which was directed to or bore upon the claim or issue which was before the court for determination, as when a judgment is

entered upon a fraudulent claim, or is procured by false testimony, where the party had an opportunity to be heard as to these matters." (*Flood* v. *Templeton*, 152 Cal. 148, 155 [92 P. 78, 13 L.R.A.N.S. 579].)

█ If appellant was fully advised about the marriage status between defendant and Tarzia at the time of the trial when he permitted the matter to go by default then, *a fortiori*, no fraud has been committed upon him and in the absence of any facts showing the existence of extrinsic fraud he is estopped, by reason of his own conduct, from challenging the conclusiveness of the decree and the validity or genuineness of his marriage. █ The decree is final and conclusive as to the existence of the marriage dissolved by the decree. In *Godfrey* v. *Godfrey*, 30 Cal.App.2d 370 [86 P.2d 357], where the evidence was held not to show the existence of extrinsic fraud which would justify a court of equity in setting aside the decree, the court said (p. 379): "When the alleged fraud or coercion is of such nature that it may reasonably be presented to the court at the trial so as to afford full and fair protection to the rights of the interested parties and they fail or neglect to avail themselves of that opportunity, a court of equity will not disturb the judgment rendered under such circumstances, but will leave the parties in the position in which they placed themselves. (*Hendricks* v. *Hendricks*, 216 Cal. 321 [14 P. 2d 83]; *Estate of Bell*, 153 Cal. 331 [95 P. 372]; *Short* v. *Short*, 106 Cal.App. 210 [288 P. 1111]; 9 Cal.Jur. 751, sec. 104; 25 Cal. Law Rev. 79.)" It is readily apparent from the foregoing résumé of the affidavits which were before the trial court that there existed a distinct conflict as to whether plaintiff was advised of the circumstances of the prior marriage at the time of the trial. █ It is well settled that where there is a substantial conflict in the facts presented by affidavits, the determination of the controverted facts by the trial court will not be disturbed. (*Aldrich* v. *Aldrich*, 203 Cal. 433, 437 [264 P. 754]; *Patterson* v. *Keeney*, 165 Cal. 465 [132 P. 1043, Ann.Cas. 1914D 232]; *Kronman* v. *Kronman*, 129 Cal.App. 10, 14 [18 P.2d 712]; *Smith* v. *Questa*, 58 Cal.App. 1, 3 [207 P. 1036]; *Doak* v. *Bruson*, 152 Cal. 17, 19 [91 P. 1001].)

The facts alleged in the affidavits filed on behalf of defendant were sufficient to warrant the trial court in concluding that all of the alleged facts presented by plaintiff in support of his motion were known to him when he filed his complaint for divorce and that nothing was done by defendant to prevent

him from presenting those facts to the court in the trial of the action and from having an adversary trial and decision of the issue, and that there was no extrinsic fraud.

Since the claim now made by plaintiff was one which could have been adjudicated had he placed the matter in issue at the trial, he may not now attack the decree. There must be an end to litigation and, under the circumstances existing in this case, the court was justified in leaving the parties in the position in which they had placed themselves.

Order affirmed.

Shinn, P. J., and Wood, J., concurred.