[Civ. No. 8922. Fourth Dist., Div. Two. Apr. 18, 1968.]

M. R. KERN, Plaintiff and Respondent, v. G. E. KERN, Defendant and Appellant.

Marshall Miles for Defendant and Appellant.

Chapman & Sprague and Leo S. Rich for Plaintiff and Respondent.

GABBERT, J. pro tem.*—The plaintiff and respondent herein, M. R. Kern, is now deceased and was the wife of defendant and appellant, G. E. Kern. For convenience, they may be referred to respectively as wife or respondent and husband or appellant.

The wife obtained an interlocutory decree of divorce from the husband on April 15, 1965. In May 1965 she suffered a heart attack and was hospitalized for a week and then spent three weeks recuperating with friends in Los Angeles. On June 10th or 11th the husband picked her up and brought her back to the home formerly occupied by the parties in San Bernardino. They lived together some eight or nine days before the wife suffered a severe stroke and heart attack on June 19, 1965. She was partially paralyzed and rendered mentally incompetent, and was confined to hospitals or rest homes until her death October 12, 1966.

On October 12, 1966, Mr. Brock, conservator of the person and estate of the wife, executed an affidavit for a final decree of divorce. The affidavit states that the parties had not become reconciled and were both living. The Brock affidavit was forwarded to the wife's attorneys but, because October 12 was a legal holiday, it was not presented to the court, and the final decree was not entered, until October 13. In a later declaration filed, opposing the motion of the husband to set aside a final decree of divorce granted as a result of the original affidavit for a final decree, Brock declared that when he filed the affidavit he did not know of the death of the wife.

In December 1966 the husband filed a motion to set aside the final decree. The motion so filed was continued for hearing on several occasions. Before it could be heard, Mr. Cooper, administrator of the estate of the wife (probate proceedings being in Los Angeles County) moved for entry of a final

*Assigned by the Chairman of the Judicial Council.

judgment of divorce *nunc pro tunc* as of April 1, 1966. On April 14, 1967, the court *granted both motions*:

(1) Setting aside the final decree of divorce granted October 13, 1966, and

(2) Ordering a final judgment of divorce entered *nunc pro tunc* as of April 1, 1966.

A number of affidavits and declarations by various persons were filed covering the actions of the parties during the period between the entry of the interlocutory decree and the date of the wife's death.

Before considering the merits of the case, the status of the parties is cause for brief discussion.

 Appellant argues that the right to obtain a final judgment of divorce is a personal right which should be exercised by a party. He further contends that the conservator and administrator had no authority to act because of the failure to have a substitution of a party made after death of the wife.

Respondent replies that a person, not a party, may obtain the entry of a final decree of divorce. He argues that the fact that the administrator of the estate of Mrs. Kern was not substituted as party-plaintiff is, at most, a mere irregularity or technical defect.

The general rule is that, after death of a party, it is improper to render judgment for or against him without first substituting his executor or administrator. Many decisions hold that an order entered after the death of a party to an action is void in the absence of the substitution of the personal representative of such decedent. (*Munchiando* v. *Bach*, 203 Cal. 457, 458 [264 P. 762]; *Hamilton* v. *Hamilton*, 83 Cal.App.2d 771, 774 [189 P.2d 722]; *Maxon* v. *Avery*, 32 Cal. App.2d 300, 302 [89 P.2d 684]; *Scoville* v. *Keglor*, 27 Cal. App.2d 17 [80 P.2d 162]; 1 Witkin, Cal. Proc., p. 399.)

There is authority, however, which holds such technical lapse to be a mere irregularity. (*Machado* v. *Flores*, 75 Cal. App.2d 759, 761 [171 P.2d 440]; *Hogan* v. *Superior Court*, 74 Cal.App. 704 [241 P. 584]; Rest., Judgments, § 78.)

In the case of *Hamrick* v. *Hamrick*, 119 Cal.App.2d 839 [260 P.2d 188], the court discusses the propriety of entering a *nunc pro tunc* final decree on motion of a defendant's second wife after his death. The second wife had married the husband one day before the entry of a final decree which had been obtained by the first wife. The first day on which the final decree could have been entered was some eight days earlier than the date of actual entry of the final decree. The

husband was killed while in the armed services during the Korean conflict, and the second wife sought the entry of the final decree *nunc pro tunc* to protect her marital position and the status of children of the second marriage.

The first wife contended that the second wife was not a proper party to make the motion since she was not a party to the divorce proceeding. The court rejected this position and stated: "Section 132 gives the court the *power* to enter a final judgment after death. Section 133 gives the court the *power* to enter a final judgment *nunc pro tunc*. These sections must be read together. . . .* While it is true the first sentence of section 133 provides for *nunc pro tunc* entry 'on the motion of either party' the second sentence (under which respondent presented her motion) contains no such language, and such language *in the case of a death* (which is the case here) would be just as inappropriate in section 133 as it would be in section 132.

"Since under section 132 the *power* of the court remains unimpaired to enter a final judgment of divorce after the death of either or both of the parties, and since sections 132 and 133 relate to the same subject and must be construed together . . .* we are satisfied that the court had the *power* under section 133 to make the *nunc pro tunc* entry as of July 6, 1950, on the motion of respondent, who, after all, was seeking only that to which Lieutenant Hamrick, the party defendant, would have been clearly entitled had he lived, namely, the validation of their marital status as of July 12, 1950." (*Citations omitted [original emphasis].) (*Hamrick* v. *Hamrick, supra,* 119 Cal.App.2d 839, 843, 845.)

It would appear that there is authority for the court to consider the failure to substitute a personal representative for the deceased in this case as a mere irregularity. Additional cases cited below will establish the fact that the right to obtain a final decree of divorce is a right that can be exercised by someone *not a party* to the divorce action. Thus, the failure to substitute the administrator of the wife's estate as plaintiff after her death is not a jurisdictional defect.

The various issues relating to vacating the final decree of divorce and the entry of the final judgment of divorce *nunc pro tunc* were contested on the merits. At most, the only action lacking was a formal substitution order. This, at best, was a mere irregularity in procedure not affecting any substantial right which, in view of the circumstances, would hardly warrant a reversal.

██ The husband received a favorable ruling from the trial court on his motion to set aside the final decree of divorce which was entered at the request of the conservator There is no attack on this ruling in the appeal before us. The determination of husband's motion by the trial court was amply supported on the ground that the declaration for the entry of the final decree made by the conservator was at best a mistake, and at worst a fraud on the court. Since the wife was deceased at the time the declaration was filed and the final decree signed, and these facts were not presented to the court, the action of the court in setting aside the final decree first entered was entirely proper.

The husband, in his brief on appeal, directs his attack against the action of the trial court granting the motion of the administrator to enter the final decree of divorce *nunc pro tunc* and contends that:

(1) The motion for a final judgment of divorce was not supported by substantial evidence;

(2) The court had no power to grant a final decree of divorce when that marriage had already been dissolved by death of a party;

(3) There was no showing of mistake, negligence or inadvertence to justify the court in entering the final judgment *nunc pro tunc*.

These contentions are controverted in each instance by the respondent.

██ *First,* considering the question as to whether there was substantial evidence to support plaintiff's motion for entry of a final decree of divorce *nunc pro tunc,* we must look at the declarations filed before the trial judge.

A major question before the trial judge was the issue of reconciliation. An analysis of the declarations shows that the purported reconciliation had been in effect for nine or ten days up until the time that Mrs. Kern was taken seriously ill and thereafter spent the rest of her life under medical or rest home care. Her mental condition was also such that she apparently was unable to make decisions for herself after her stroke, and a conservator of her person and estate was appointed. Mr. Kern visited her frequently during this period before her death.

Some of the opposing declarations cast doubt on the true nature of the claimed reconciliation. The primary difficulty of the marriage was the drinking problem which plagued the husband. The declarations and transcript of the default hearing on the divorce point out that this caused the divorce in

the first place, and that the wife was wary of the promises of reformation made by the husband.

The general rule is that a reconciliation will result if the parties intended to and did reunite as husband and wife. There must be a mutual intention to so reunite (*Dean* v. *Dean,* 77 Cal.App.2d 98 [174 P.2d 705]), and this intention must be in good faith. (*Helbush* v. *Helbush,* 209 Cal. 758 [290 P. 18].)

The California Family Lawyer (2 Cont.Ed. Bar, pp. 1350, 1351) contains an excellent summary of the rules governing reconciliation. Occasional cohabitation and isolated acts of intercourse are not controlling circumstances. An intent to permanently reunite is necessary. The length of time that the parties cohabit is not controlling if they have actually resumed marital relations intending to become reconciled. In *Peters* v. *Peters,* 16 Cal.App.2d 383 [60 P.2d 313], the parties cohabited (as in the present case) for about ten days. The court there held that mere passage of time was not conclusive as to a permanent reconciliation. The controlling question is the actual finding of an intent to reconcile.

*Angell* v. *Angell,* 84 Cal.App.2d 339 [191 P.2d 54], held that it was an abuse of discretion for the trial court to deny a final decree of divorce to a wife who had accepted her husband back on condition that he stop drinking for a year, a condition which he violated. The court stated at page 343: ''If a reconciliation based on unconditional forgiveness is effected before the entry of a final decree the trial court should deny such a decree to either party. . . . But mere cohabitation where a reconciliation had not in fact been effected will not prevent the trial court from granting the final decree.''

Assuming that the declarations in this case might sustain a conditional reconciliation, such would be a question of fact for the trial court to determine. In the *Angell* case, *supra,* the court stated: ''Whether an agreement is an unconditional one of forgiveness, and therefore justifies the denial of the final decree, or is a conditional one, and therefore warrants the granting of the final decree, is a question of fact. If the evidence, or the reasonable inferences therefrom, is conflicting, the determination of the question by the trial court, in accordance with elementary principles, is conclusive on the appellate court.'' (*Angell* v. *Angell, supra,* 84 Cal.App.2d 339, 343.)

An examination of the various declarations which were filed in the present case reveals sufficient factual basis for a finding

that the parties had not become so reconciled as to have fully resumed their marital status with the intention of making it permanent.

The *second* question for consideration is whether the court had the power to grant a final decree of divorce when it had, in fact, already been dissolved by the death of one of the parties.

A final judgment of divorce may be entered after the death of a spouse. Section 132 of the Civil Code provides, in part, as follows: "The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either party before the entry of such final judgment. . . ." Section 133 of the Civil Code, as it was in effect at the time this matter was heard, provides: "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment or for relief under Chapter 8, Title 6 of Part 2 of the Code of Civil Procedure, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed, and entered nunc pro tunc as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."

Sections 132 and 133 of the Civil Code must be construed together. (*Estate of Hughes,* 80 Cal.App.2d 550 [182 P.2d 253].) Prior to 1935, entry of final judgment of divorce was governed by section 132 of the Civil Code. A marriage was

dissolved only on the entry of the final judgment and there was no provision in law for the entry of a judgment *nunc pro tunc.* Section 132 provides that the death of either party shall not impair the court's *power* to enter a final decree. In 1935 section 138 was enacted. It expressly authorizes the court to enter final judgments *nunc pro tunc* as of the date when such could have been entered in the event that through mistake, negligence or inadvertence none has been entered. (Also see *Hamrick* v. *Hamrick, supra,* 119 Cal.App.2d 839, 843, 845; *Hurst* v. *Hurst,* 227 Cal.App.2d 859 [39 Cal.Rptr. 162]; *Adoption of Graham,* 58 Cal.2d 899 [27 Cal.Rptr. 163, 377 P.2d 275]; *Macedo* v. *Macedo,* 29 Cal.App.2d 387 [84 P.2d 552]; *Price* v. *Price,* 242 Cal.App.2d 705 [51 Cal.Rptr. 699].)

Thus, the court had the *power* to enter the final decree *nunc pro tunc* even though one of the parties was deceased.

 *Third,* it is argued by appellant that there was no showing of mistake, negligence or inadvertence to justify the court in entering the final judgment of divorce *nunc pro tunc.*

It is clear under the circumstances of this case that there was no mistake, negligence or inadvertence on the part of Mrs. Kern to seek a final decree of divorce. For several months before and after the date on which a final decree could have been granted, she was mentally unable to fully comprehend the marital situation.

Mr. Brock, the conservator, who filed the declaration for the final decree on the day she died, stated in one of his declarations filed herein: "She [plaintiff] had intermittent lucid periods, but in my opinion her mental condition was such that she would not have been able to decide whether or not she wanted to reconcile with Mr. Kern. I was advised by my attorney that a final judgment of divorce could be entered in this case at any time after March 10, 1965 . . . and that I could effect the entry of the final judgment if I thought it was necessary or proper. *However, I did not do so because I hoped that Mrs. Kern's mental condition might improve to the point where I could intelligently discuss it with her."* [Italics added.]

The conservator, in his declaration filed in support of the motion for *nunc pro tunc* entry of final decree of divorce stated:

[Paragraph II] "After the defendant left the state of California having, as I later learned, gone to Indiana, the attorney representing me as conservator of the person and estate of the plaintiff in this case agreed with me that we should proceed to enter a final judgment of divorce. We came

to that conclusion several months after Mr. Kern left. He left around April of 1966.

[Paragraph III] ''My attorney and I discussed the entry of a final judgment again from time to time thereafter but we inadvertently did not do so until Mrs. Kern's illness became worse in October 1966. As indicated by the file in the conservatorship proceeding, this Court's Case No. C 266, there were numerous other matters to be handled therein and we inadvertently did not get around to requesting the entry of the final judgment because of the press of the other business of the conservatorship.''

There is no indication that Mrs. Kern requested the entry of the final judgment at any time.

The case of *Berry* v. *Berry*, 140 Cal.App.2d 50, 59-60 [294 P.2d 757], states: ''There must be a showing of mistake, negligence, or inadvertence. . . .* In the absence of such a showing the court is without power to enter the final decree *nunc pro tunc.* 'A mistake of fact is when a person understands the facts to be other than they are; a mistake of law is when a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts. . . .* Inadvertence is defined as lack of heedfulness or attentiveness, inattention, fault from negligence.' . . .* Negligence may be passive in character: it may consist in heedlessly refraining from doing the proper thing. When the circumstances call for activity, one who does not do what he should is negligent. . . .* Negligence is sometimes defined as the failure to use ordinary care in the management of one's person or property. . . .* The essence of negligence is the failure to exercise due care and take proper precaution in a particular case. . . .* In determining the presence or absence of negligence the test is: what would a reasonably prudent person do under similar circumstances? . . .* Negligence always relates to some circumstances of time, place, or person. . . .*

''There is no rule of law which compels a party to apply for a final decree and the circumstances may be such that a party does not wish to apply for one. Many factors may prompt inaction, i.e., there may have been a reconciliation or there may be hope of one. There was no showing in the present case of any mistake or inadvertence; or of any circumstances which called for activity on the part of plaintiff between July 7, 1953, and July 20, 1954; or of failure on his part to exercise ordinary care; or that a reasonably prudent person would have applied for the final decree within that period. In short,

there was no showing of 'mistake, negligence or inadvertence.' The mere failure of a party to apply for a final decree does not constitute mistake, negligence, or inadvertence. . . .'' [*Citations omitted.]

It has been held that inadvertence and negligence may consist of a lack of heedfulness or attentiveness by refraining from doing the proper thing, and by failing to act when action is required. (*Hurst* v. *Hurst, supra,* 227 Cal.App.2d 859; *Berry* v. *Berry, supra,* 140 Cal.App.2d 50; *Hull* v. *Hull,* 102 Cal.App.2d 382 [227 P.2d 546].) The *Hurst* case points out at page 867: ''Likewise, delay in the entry of the final judgment of divorce beyond the time when such judgment could have been obtained is a sufficient basis for finding inadvertence and negligence when the *party* entitled to such final judgment *had no valid reason for such delay.*'' [Italics added.] (Citing: *Overby* v. *Overby,* 154 Cal.App.2d 813 [317 P.2d 91]; and *Hamrick* v. *Hamrick, supra.*)

In the present case, a party did not seek entry of a final judgment. There were valid reasons, i.e., her physical and mental illness, which prevented the wife from acting. One of the declarations on file herein states, in substance, that the deceased had stated that her family kept talking to her about getting a divorce but that she was not in a condition to be making such a decision.

Section 133 of the Civil Code does not specifically set out *whose* negligence, mistake or inadvertence the relief must be founded upon. In *Hamrick* v. *Hamrick, supra,* 119 Cal.App.2d 839, a second wife sought a final decree of divorce *nunc pro tunc* to end the deceased husband's prior marriage. The first wife argued that there was insufficient showing of negligence, mistake or inadvertence, and presented an affidavit of the first wife's attorney that he had informed the husband not to remarry until he was notified that the final decree of divorce had been obtained. The appellate court held that since the husband was deceased and could not speak, the attorney's affidavit stood unchallenged. However, because of the presumption of the validity of the second marriage the lower court could have concluded that the husband might have mistaken or misunderstood what was said by the attorney, and this mistake itself would come within the statutory language. (See Comment in 6 U.C.L.A. L.Rev., ''*Nunc Pro Tunc—A Cure for Bastardy and Bigamy in California,*'' pp. 298, 306, 307.) In the *Berry* case, *supra,* there was no second marriage, and the court refused to imply negligence, mistake,

or inadvertence from the single fact that the final decree had not been entered as soon as it could have been. However, in the *Berry* case the appellate court stressed the point that there was no showing that the final decree had not been entered because of mistake, negligence, or inadvertence.

The authors of the comment mentioned above in 6 U.C.L.A. L.Rev. at page 307, after discussing the cases of *Hull* v. *Hull*, *supra*; *Hamrick* v. *Hamrick*, *supra*; and *Berry* v. *Berry*, *supra*; make the following pertinent comment: "Thus, in the light of the cases, it appears that though negligence, mistake, or inadvertence must always be shown, the amount of proof required differs, depending upon whether or not there has been a subsequent marriage after the final decree could have been entered. If there has been a second marriage this is a circumstance in which the failure to obtain a final decree is clearly indicative of mistake, negligence, or inadvertence. The presumptions in favor of the validity of the second marriage are thus invoked, lessening the amount of direct evidence required to show mistake, negligence, or inadvertence. On the other hand, where there has been no second marriage the failure to obtain a final decree is equivocal and thus gives rise to no presumptions."

In essence, then, this present case condenses into the inquiry: Was there a failure to seek a final decree of divorce because of some mistake, negligence or inadvertence on the part of the conservator? We thus limit the issue because, as we have stated, the wife was in no condition to seek such final decree and it seems clear that the administrator of her estate was in no position to claim that he was mistaken, inadvertent or negligent in not filing for a final decree since he could not have been appointed until after her death. Further, the administrator did not file any declaration in this matter.

The trial court had before it the declarations which we have mentioned, as well as others which have not been quoted. The declarations are sketchy. The husband and others aver that there was a reconciliation. Others deny such reconciliation.

Under the circumstances of this case, the granting or denial of a motion to enter a final decree of divorce *nunc pro tunc,* heard on affidavits, rested in the sound discretion of the trial court, and its order should not be disturbed on appeal unless it clearly appears that the trial court was guilty of an abuse of discretion. The burden is on appellant-husband to show that there was an abuse of the trial court's discretion. The trial court impliedly found that there was inadvertence on the part of the conservator in failing to seek the final decree when

the same could have been entered. ▮ In those cases where the issues are tried on affidavits, the rule on appeal is that the affidavits which favor the contentions of the prevailing party establish the facts stated therein, and all facts which reasonably may be inferred therefrom. (*Wolfson* v. *Haddan,* 105 Cal.App.2d 147, 149 [233 P.2d 145].) When there is a conflict in the facts presented by affidavits, the determination of those facts by the trial court will not be disturbed on appeal. (*Deyl* v. *Deyl,* 88 Cal.App.2d 536, 543 [199 P.2d 424]; *Aldrich* v. *Aldrich,* 203 Cal. 433 [264 P. 754]; *Patterson* v. *Keeney,* 165 Cal. 465 [132 P. 1043, Ann.Cas. 1914D 232].) ▮ We do not find an abuse of discretion in the ruling made by the trial court.

The trial court made proper orders on the two motions. The failure to substitute a personal representative for the decedent, particularly under these circumstances where appellant-husband accepted a favorable ruling on his motion, is not a jurisdictional defect. The motion for a final decree of divorce *nunc pro tunc* was supported by conflicting but substantial evidence, and the court had the power to grant a final decree of divorce *nunc pro tunc* even though Mrs. Kern was deceased.

The order of the superior court granting the motion for entry of the final decree of divorce *nunc pro tunc* is affirmed.

McCabe, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied May 10, 1968, and appellant's petition for a hearing by the Supreme Court was denied June 11, 1968.