[Nos. B070292, B072405. Second Dist., Div. Seven. May 19, 1994.]

In re the Marriage of BARBARA JEAN and JOEL FRANCIS TAMRAZ.
BARBARA JEAN TAMRAZ, Respondent, v.
JOEL FRANCIS TAMRAZ, Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication. The portions directed to be published are: the Introduction, Facts and Proceedings, part I and the Disposition.

†Pursuant to California Constitution, article VI, section 21.

**COUNSEL**

Joel Francis Tamraz, in pro per., for Appellant.

Marian L. Stanton, Lascher & Lascher, Wendy C. Lascher and Gabriele Mezger-Lashly for Respondent.

**OPINION**

**JOHNSON, J.**—In consolidated actions for dissolution of marriage the trial court awarded judgment to wife based on a marital settlement agreement and ordered the judgment effective nunc pro tunc. In a subsequent order, the trial court awarded attorney fees to wife. We affirm.

### FACTS AND PROCEEDINGS BELOW

We will refer to appellant, Joel Tamraz, as "husband" and respondent, Barbara Tamraz, as "wife."

In September 1976, husband filed an action for dissolution of marriage. In October of that year husband and wife entered into a marital settlement

agreement "to effect a complete and final settlement of all matters with reference to the rights of each party . . . ." Among other things, the agreement provided for the distribution of community assets, payment of child support, and attorney fees in the event of an action or proceeding to enforce the agreement.

With respect to wife's community property share in husband's law practice, the parties agreed there were outstanding preseparation accounts receivable for legal work performed by husband. They agreed that as those bills were collected husband would pay a designated percentage to wife and husband will periodically account to wife for the amounts collected. Husband never paid wife any sums under this provision of the agreement and never gave her an accounting.

As to child support, the agreement recited the parties have two children: Susan born December 1967, and Joel born October 1971. The parties agreed husband would pay to wife $200 per month per child commencing on November 15, 1976; that such amount is reasonable and sufficient for the needs of the children and based on husband's financial ability. The agreement provided child support obligations would terminate as to each child upon the child reaching the age of majority or upon other events not relevant here.

The agreement also covered certain procedural matters concerning the pending dissolution action. The parties agreed that upon the execution of the agreement they would stipulate to the entry of a default against wife in the pending action which then would proceed as a default matter. Husband was to handle the appearance at the hearing on the matter and prepare the interlocutory judgment. Husband was to submit the stipulation for default and the judgment to wife's attorney for his approval.

Under "General Provisions" the agreement provided:

"A. This Agreement shall be effective immediately as of the day and year first above written [October 30, 1976]. It shall survive a reconciliation by the parties unless otherwise agreed in writing.

"B. If an interlocutory judgment of dissolution of marriage is obtained by either party, the original of this Agreement shall be introduced into evidence in said action, and the executory provisions of this Agreement shall be included in a stipulated or proposed judgment, which shall state that the Agreement is made a part thereof, and is incorporated as a part of the judgment for the purpose of being an operative part of said judgment. The parties agree that the Court shall be requested to approve the Agreement as fair and equitable and to make specific orders requiring each party to do all of the things provided for in this Agreement that at the time have not been fully performed."

■■■ ■ ■ It is undisputed husband never prepared a stipulation for default or interlocutory judgment in the 1976 dissolution action.[1]

In 1977 the parties attempted a reconciliation and signed a reconciliation agreement under which their earnings would remain their separate property, they would equally share the expenses to maintain their residence and they would set up a joint checking account to pay joint expenses incurred in supporting their two children and maintaining their residence. The parties dispute whether a reconciliation ever occurred.

Wife's declaration states husband continued to maintain a separate residence and the joint checking account was never established. In any event, the marital settlement agreement specifies, "It shall survive a reconciliation by the parties unless otherwise agreed in writing." The reconciliation agreement contains no such agreement.

In 1989 wife filed a dissolution action and moved the court to enter a judgment nunc pro tunc in the 1976 action incorporating the parties' marital settlement agreement or, in the alternative, to enter a judgment on the agreement in the present action. Husband opposed the entry of judgment on the marital settlement agreement in either action. Following wife's motion for entry of judgment nunc pro tunc in the 1976 action, husband requested and the clerk of court entered a dismissal of that action.

By stipulation the matter was referred to retired Commissioner Robert L. Brock as a temporary judge for decision under Code of Civil Procedure section 638. Commissioner Brock ordered the 1976 and 1989 dissolution actions consolidated, granted the motion to enter judgment in the 1976 action nunc pro tunc as of November 1, 1976[2] and found husband to be in arrears in child support from June 1984 through October 1989 in the sum of $17,420.70. The trial court entered a further order which essentially incorporated the marital settlement agreement as the court's judgment in the consolidated cases. Subsequently, the trial court granted wife's motion for attorney fees.

---

[1]On petition for rehearing husband contends, "Under the settlement agreement husband had no obligation to prepare a stipulation for default, and any reference to such a fact in the decision is false." Paragraph 6 of the settlement agreement provides, in relevant part, "[I]t is agreed that upon execution of this Agreement, the parties shall stipulate to the entry of a default against Wife and the proceeding filed by Husband shall proceed as a default matter. Husband shall . . . prepare the interlocutory judgment, and has, in fact, prepared this Agreement. Husband, shall, however, submit *said documents* to attorney for Wife for his approval." (Italics added.) Although the agreement does not specify husband shall prepare the stipulation for default, as it does with respect to the interlocutory judgment, the obligation to prepare the stipulation for default is reasonably inferable from his duty to prepare the judgment and from the requirement he submit "said documents" to wife's attorney for approval. The stipulation for default is one of the documents identified in the previous sentence and, therefore, is among the "said documents."

[2]The commissioner's reference to November 1, 1967, was clearly a typographical error.

Husband appeals, contending the court erred in awarding judgment nunc pro tunc in the 1976 action on the ground, among others, he had unilaterally dismissed that action under Code of Civil Procedure section 581 prior to the court's entry of judgment. Husband also contends the trial court abused its discretion as to the amount of attorney fees awarded wife.

I. *The Trial Court Properly Ordered Entry of Judgment on the Marital Settlement Agreement Nunc Pro Tunc.*

■ After reading the parties' declarations and points and authorities and hearing oral argument, Commissioner Brock concluded, "Based on wife's reliance on husband to have the Marital Settlement Agreement entered as a judgment and husband's fiduciary obligations both as spouse and attorney it is fair and equitable that the Marital Settlement Agreement be entered nunc pro tunc providing that the child support commence retroactive to November 1, 1976." Substantial evidence supports these findings.[3]

The settlement agreement provided, "[u]pon the execution of this Agreement, the parties shall stipulate to the entry of a default against Wife . . . ." It also provided husband would prepare the necessary papers and submit them to wife's attorney for approval. Although the agreement did not set a time limit for husband to perform these acts, a reasonable time is inferred. Wife was obviously aware husband had not prepared the stipulation and judgment. However, the evidence shows wife relied upon husband's representations the settlement agreement was fully enforceable and entry of judgment was a mere formality. Husband told wife she could "trust him" and he "would never try to cheat [her]." Wife testified she relied on the above representations. Furthermore, the evidence shows husband took advantage of the settlement provisions favorable to him by taking out a loan on the family residence, selling stock and claiming one of the children as a dependent on his income tax returns. Finally, the evidence showed in 1988 husband did prepare a judgment in the 1976 action and presented it to wife. This judgment, however, did not cover child support for Susan or back support for both children and made no reference to wife's interest in the accounts receivable from husband's law practice. Wife refused to approve it. Therefore, husband's attempt to dismiss the 1976 action was ineffective under Code of Civil Procedure section 581, former subdivision (h) (now subdivision (i)).

■ At the time husband requested dismissal, Code of Civil Procedure section 581, former subdivision (h) provided in relevant part, "No dismissal

---

[3] At the time of the order, Civil Code section 4513 provided in relevant part, "In cases in which the court has determined that a decree of dissolution ought to be granted, but by mistake, negligence or inadvertence, the judgment has not been signed, filed, and entered, the court may cause the judgment to be signed, dated, filed and entered therein as of the date the same could have been signed, dated, filed and entered originally . . . ."

of an action may be made or entered . . . where affirmative relief has been sought by the cross-complaint of a defendant . . . ." Although we have found no case holding this exception applicable in a dissolution proceeding, we find persuasive dictum to this effect in *In re Marriage of Dover* (1971) 15 Cal.App.3d 675 [93 Cal.Rptr. 384].

In *Dover*, the court recognized there is no such thing as a cross-complaint in a dissolution proceeding but "[t]he controlling factor in determining whether a plaintiff has the right to dismiss under this section has been held to be whether the other party has requested affirmative relief, *regardless of the form of the pleading.* (*Guardianship of Lyle*, 77 Cal.App.2d 153, 154-155 [174 P.2d 906].)" (15 Cal.App.3d at p. 679, fn. 4, italics by the court.) In the case of a response to a petition for dissolution of marriage, the court reasoned, if the response seeks affirmative relief, it must be treated as a cross-complaint of the defendant within the meaning of Code of Civil Procedure section 581. California Rules of Court, rule 1206 specifies provisions of law apply regardless of nomenclature if they would otherwise apply under the Family Law rules. Therefore, where a response seeking affirmative relief has been filed, "the 'plaintiff' (petitioner) would have no right, merely because of the difference in nomenclature, to request a dismissal thereafter without the consent of the respondent." (15 Cal.App.3d at p. 679.)

History shows that as pleading rules have changed, so has the nomenclature of Code of Civil Procedure section 581. Prior to 1971 the statute prohibited the plaintiff from voluntarily dismissing an action if a counterclaim had been filed "or affirmative relief sought by the cross-complaint or answer of the defendant." In 1971, the Code of Civil Procedure was amended to abolish counterclaims and claims for affirmative relief in the answer. A corresponding amendment was made to Code of Civil Procedure section 581 eliminating references to counterclaims and affirmative relief in the answer. (*Review of Selected 1971 Legislation* (1972) 3 Pacific L.J. 258-259.) This left cross-complaints but, we note, not just any cross-complaint—only cross-complaints "where affirmative relief has been sought." Thus the sine qua non of preventing voluntary dismissal has remained the opposing party's claim for affirmative relief regardless of the form that claim may take.

█ Affirmative relief for purposes of Code of Civil Procedure section 581 is "the allegation of new matter which in effect amounts to a counterattack." (*Wilson* v. *L.A. County Civil Service Com.* (1954) 126 Cal.App.2d 679, 682 [273 P.2d 34].) "[I]n order to curtail the plaintiff's privilege of dismissing his action voluntarily, the defendant must clearly and specifically bring himself within the terms of the statute, i.e., by plainly requesting affirmative relief." (*In re Mercantile Guaranty Co.* (1968) 263 Cal.App.2d 346, 352 [69 Cal.Rptr. 361].)

 In the present case, the record does not show wife filed a responsive pleading to husband's petition in the 1976 dissolution action. She did, however, respond by filing a motion for entry of judgment based on the marital settlement agreement. This motion plainly requested affirmative relief different from what husband was seeking as evidenced by the proposed judgment in that action he prepared and submitted to her in 1988. Therefore, we conclude, husband could not unilaterally dismiss the 1976 dissolution action and such action was still pending at the time of Commissioner Brock's orders.

 Husband next argues Commissioner Brock's order violated Civil Code former section 4513[4] which prohibited entry of a judgment nunc pro tunc if it appeared an appeal would be taken in the action and prohibited a judgment to be nunc pro tunc as of a date prior to trial in the matter, prior to the date of an uncontested judgment hearing or prior to the date of submission of an application for judgment on affidavit. Husband contends it was clear he would file an appeal if judgment was granted nunc pro tunc and it is undisputed there never was a trial, hearing on uncontested judgment or application for judgment on affidavit in the 1976 action.

As to evidence an appeal would be taken in the action, we have reviewed husband's citations to the record and find they merely contain his assertions it would be error to enter a judgment nunc pro tunc. The trial court need not have inferred from this argument an appeal would be filed by husband. Furthermore, the judgment was based on the 1976 marital settlement agreement. Obviously, there would have been no point in stipulating to have judgment entered on this agreement if husband intended to appeal the judgment.

It is true there never was a trial, hearing on uncontested judgment or application for judgment on affidavit in the 1976 action. However, the trial court found the reason none of these events occurred was because husband failed to follow through on his obligations under the settlement agreement. The purpose of a judgment nunc pro tunc "is to avoid injustice to a person whose rights are threatened by a delay which is not his fault." (*Hurst* v. *Hurst* (1964) 227 Cal.App.2d 859, 868 [39 Cal.Rptr. 162, 19 A.L.R.3d 635].) Civil Code section 4513 "is to be liberally construed to effectuate its object." (*Adoption of Graham* (1962) 58 Cal.2d 899, 904 [27 Cal.Rptr. 163, 377 P.2d 275].) Under the facts of this case, it was husband's fault alone no application for judgment was made and no default judgment taken against wife as contemplated in the settlement agreement. Husband should not be allowed to take advantage of his own wrong in order to avoid obligations he clearly undertook in the settlement agreement.

---

[4]See now Family Code section 2346.

■ Finally, there is no merit to husband's contention Commissioner Block lacked authority to enter judgment in the 1976 action because the stipulation for reference only applied to the action filed by wife in 1989. The stipulation provided Commissioner Brock "shall have complete jurisdiction over this action for all purposes, except as provided herein" and "[a]ny ruling, decision or judgment made in this matter shall be made with the same force and effect, as well as all procedural rights, as if the matter had been determined by a judge of the Superior Court of the County of Los Angeles." Commissioner Brock acquired jurisdiction over the 1976 action by ordering it consolidated with the 1989 action. A judge of the superior court would have had authority to order the 1976 and 1989 actions consolidated (Code Civ. Proc. § 1048, subd. (a)), and nothing in the stipulation specifically prohibited Commissioner Brock from doing so.[5]

For the reasons set forth above, we conclude the trial court properly entered judgment nunc pro tunc in the 1976 dissolution action.[6]

II. *The Trial Court Properly Awarded Attorney Fees to Wife and Wife Is Entitled to Attorney Fees on Appeal.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The orders and judgment are affirmed. The trial court shall award wife reasonable attorney fees on this appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied June 14, 1994, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 27, 1994.

---

[5]*Cochrane* v. *Superior Court* (1968) 261 Cal.App.2d 201 [67 Cal.Rptr. 675], relied upon by husband, is not on point because it involved an attempt to consolidate with a superior court action a municipal court action over which the superior court had no jurisdiction.

[6]In his reply brief, husband contends for the first time Commissioner Brock's finding he was over $17,000 in arrears in child support is not supported by the evidence. As a general rule, new issues cannot be raised by appellant in a reply brief. (Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484.) In any event, we find the commissioner's ruling was supported by substantial evidence.

*See footnote, *ante*, page 1740.