Filed 8/18/23  Labrada v. Labrada CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| REY DAVID LABRADA, SR.,<br><br>     Appellant,<br><br>     v.<br><br>REY DAVID LABRADA, JR.,<br><br>     Respondent. | D080569<br><br><br><br>(Super. Ct. No. 17FL000184S) |

APPEAL from a judgment of the Superior Court of San Diego County, Tim Nader, Judge.  Affirmed.

Bickford Blado & Botros and Andrew J. Botros for Appellant.

Linda Cianciolo for Respondent.

After a 10-year marriage with two children, Rey and Judit Labrada separated.[1]  About two years later, Rey filed for divorce.  Another four and one-half years passed, but in August 2021 the parties signed a settlement agreement (Agreement) resolving all issues in their dissolution proceeding.  All that remained was for Rey's lawyer to attach the Agreement to a standard court form and file it with the court to obtain a judgment.  For various

---

1    As is customary in family law matters, for clarity we refer to the two parties by their first names.  No disrespect is intended.

reasons, that did not happen before Judit's untimely death in an automobile accident in December 2021.

On learning of the tragedy, Judit's lawyer requested entry of judgment nunc pro tunc to the date of the Agreement. She also sought to substitute the couple's now 19-year-old son (Son) as his mother's successor in interest. Rey opposed the motion, arguing that the court lacked jurisdiction because Judit's death abated the dissolution proceeding. Weighing the equities, the family court entered a judgment of dissolution nunc pro tunc to August of 2021.

For nearly a century, Family Code[2] section 2346 and predecessor statutes have broadly authorized a trial court to backdate a divorce judgment to when it *could have* been entered, if necessary to avoid injustice. The court in this case did not abuse its discretion in invoking this authority. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Judit and Rey were married in 2004, separating a little more than 10 years later. They had two children—Son, born in 2002, and a daughter (Daughter) born in 2005. Rey filed a petition for dissolution in January 2017.

Although the litigation was "highly contested, with many hearings," there is little in the record to reflect exactly what transpired over the next four and one-half years.[3] But in August 2021, the parties and their counsel participated in a settlement conference that resulted in the Agreement signed by both Rey and Judit. The document addressed a comprehensive list of outstanding issues including custody and visitation, child support, spousal

---

[2]     Further undesignated statutory references are to the Family Code.

[3]     The subsequent settlement agreement recites that there were existing court orders on custody and visitation, as well as child and spousal support.

2

support, division of property,[4] and attorney's fees. At the outset, it specified that the Agreement "shall be the order of the Court" and that Rey's counsel would prepare a formal dissolution judgment incorporating the Agreement. The last paragraph made the Agreement "subject to the provisions of Code of Civil Procedure Section 664.6" and provided that "if not incorporated into a Judgment by the parties, shall become the Judgment upon request by either party to the Court upon a properly filed and served motion."

Emails between counsel in the fall of 2021 reflect several disagreements that apparently caused Rey's lawyer to delay submitting to the court a request for entry of judgment. For example, Rey's attorney asked Judit's lawyer for an update on her efforts to refinance the loan on the family home. She also requested that Judit stipulate to a change in child support because Daughter had recently moved in with Rey. Judit's attorney responded that she needed a final judgment to finish the refinance, and the two sides disagreed about whether a judgment was really necessary to accomplish that task. Rey's counsel insisted that the judgment include post-Agreement changes to child support.[5] Judit's attorney accused Rey of failing

___

[4]    In separately numbered paragraphs, the Agreement addressed bank accounts, retirement funds, vehicles, personal items, and the couple's residence in Chula Vista. As to the residence, a process was detailed giving Judit the option of refinancing the property in order to buy Rey out. If she was unable to do so within a certain time frame, the property would be listed for sale.

[5]    It is undisputed that Rey's lawyer never submitted a proposed judgment based on the Agreement as the parties contemplated in August. The emails indicate that at some point in the fall she prepared a judgment that sought to incorporate changes to child custody and support not included in the parties' Agreement. That proposed judgment is not part of our record, and the changes were never agreed to by Judit.

3

to pay child and spousal support, and each lawyer blamed the other for the delay in obtaining a judgment.

That is where things stood on December 26, 2021, when Judit was killed in a car crash. After first learning of her death in February 2022, Judit's then-lawyer filed an ex parte request for entry of judgment. The court denied ex parte relief, but directed counsel to file a request for order (RFO) and set a hearing for July 14, 2022. The RFO, nominally filed on behalf of Judit, asked the court to appoint Son as Judit's successor in interest and to enter judgment containing the terms of the Agreement, but retroactive (nunc pro tunc) to the date it was signed.[6]

Rey opposed this request, claiming that the action abated and the family court lost jurisdiction upon Judit's death. In his view, the fact that no request for entry of judgment had been submitted to the court while Judit was alive precluded the requested order. He also argued that the request to join Son as a successor in interest was defective.

Finding that the parties' Agreement "clearly evidences [their] intent . . . to incorporate these terms into a judgment," the court entered judgment nunc pro tunc to August 24, 2021, the date it was signed.[7]

---

[6] The parties appear to agree that Judit died intestate. Entry of judgment nunc pro tunc would allow Son to inherit his share of his mother's share of the community property awarded to her in the judgment.

[7] The court did not expressly grant the motion to substitute Son as Judit's successor in interest, but the minute order reflects that Judit's former counsel appeared and argued on his behalf.

4

DISCUSSION

*In re Marriage of Mallory* (1997) 55 Cal.App.4th 1165 (*Mallory*) is the seminal California decision addressing the family court's power to enter a judgment of dissolution nunc pro tunc after the death of one of the parties. In *Mallory,* a dissolution action proceeded to trial and, following written arguments, the matter was submitted. (*Id.* at p. 1168.) But before the court issued a decision, the husband died. A ruling was filed later that same day, and judgment was subsequently entered nunc pro tunc to a date before the husband's death. (*Id.* at pp. 1168–1169.) Affirming the judgment, the *Mallory* court held that the trial court was authorized "to enter a judgment nunc pro tunc with respect to all issues, including marital status, submitted to the court for decision prior to the death of a party to the proceeding, notwithstanding the general rule that such a death abates a cause of action for termination of status." (*Id.* at p. 1167.)

Emphasizing different aspects of the opinion, both parties argue that *Mallory* supports their position. Judit/Son interpret it as reflecting broad authority for a court to enter a dissolution judgment nunc pro tunc to a date preceding a party's death whenever all contested issues have been resolved and it is in the interests of justice to do so because the actual entry of judgment is a mere formality. Rey distinguishes *Mallory* on its facts, pointing out that in that case the matter had been submitted to the court for decision following trial. He implicitly suggests that *Mallory* might authorize entry of a judgment nunc pro tunc in this case, but only *after* a proposed judgment attaching the Agreement had been presented to the court. Because that never happened while Judit was alive, he contends the family court lost jurisdiction to enter a judgment of dissolution.

5

*Mallory* discusses multiple statutory sources of authority for a court to enter a dissolution judgment nunc pro tunc, as well as the court's inherent power to do the same. (*Mallory, supra,* 55 Cal.App.4th at pp. 1170–1171, 1176–1179.) We only find it necessary to discuss section 2346, which appears to have the most direct application to this situation. Subdivision (a) of that section provides, in relevant part:

> "If the court determines that a judgment of dissolution of the marriage should be granted, but by mistake, negligence, or inadvertence, the judgment has not been signed, filed, and entered, the court may cause the judgment to be signed, dated, filed, and entered in the proceeding as of the date when the judgment could have been signed, dated, filed, and entered originally . . . ." (§ 2346, subd. (a).)

The substance of section 2346, subdivision (a) has been part of California's statutory law since 1935, first in the Civil Code (successively former §§ 133 and 4515) and later as part of the Family Code. (See Stats. 1935, ch. 407, § 1, p. 1459 [Civ. Code, former § 133]; Stats. 1969, ch. 1608, § 8, p. 3327 [Civ. Code, former § 4515]; Stats. 1992, ch. 162, § 10 [§ 2346].)[8]

---

[8] In its original version, Civil Code former section 133 provided: "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have

6

While the "most obvious" purpose of the statute was to validate marriages that would otherwise be bigamous (*Adoption of Graham* (1962) 58 Cal.2d 899, 904), the statutory power to enter a dissolution judgment nunc pro tunc has been liberally construed "to avoid injustice to a person whose rights are threatened by a delay which is not his fault." (*Hurst v. Hurst* (1964) 227 Cal.App.2d 859, 868 (*Hurst*).) It is "equally applicable to all situations" (*Price v. Price* (1966) 242 Cal.App.2d 705, 710) and has been invoked in circumstances as varied as paternity (*ibid.*), legitimacy (*Hurst,* at p. 868), and inheritance (*Waller v. Waller* (1970) 3 Cal.App.3d 456, 467). The critical question is whether all issues in dispute were resolved and the parties would have been entitled to entry of judgment as of the nunc pro tunc date.

To seek relief under section 2346, the person adversely affected by the delay need not be a party to the divorce action.[9] (*Kern v. Kern* (1968) 261 Cal.App.2d 325, 329.) The sufficiency of the evidence to establish that "mistake, negligence or inadvertence" caused a delay in the entry of judgment is a question of fact for the trial court. (*Menge v. Brown* (1959) 173 Cal.App.2d 6, 19.) Its decision to enter a judgment nunc pro tunc will not be reversed on appeal absent a clear showing that the court's broad discretion was abused. (*Kern,* at p. 336.)

---

been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment upon the filing thereof."

[9] For this reason, we find no merit to Rey's additional argument that the trial court erred by allowing Son to act as Judit's successor in interest. Whether that was proper ultimately turns on whether the court had the power to enter a judgment nunc pro tunc to a date before Judit's death. Nor are we persuaded that the court erred by failing to join Daughter, a minor, given that her parent, Rey, is already a party.

Relying on his interpretation of *Mallory,* Rey's primary argument is that the authority to backdate a divorce judgment under section 2346 does not arise unless and until the parties actually submit the proposed judgment to the court. But this is not the law. The "mistake, negligence or inadvertence" that triggers the court's power under the statute can be a failure by *a party or the party's attorney* to submit a proposed judgment that the court would be obliged to enter. (*Hurst, supra,* 227 Cal.App.2d at p. 867 ["[D]elay in the entry of the final judgment of divorce beyond the time when such judgment could have been obtained is a sufficient basis for finding inadvertence and negligence when the party entitled to such final judgment had no valid reason for such delay."].)

*In re Marriage of Tamraz* (1994) 24 Cal.App.4th 1740 (*Tamraz*) is directly on point. There, after the husband filed a petition for dissolution in 1976, the parties entered into a full stipulation to resolve the pending action, effective immediately.[10] (*Tamraz,* at pp. 1743–1744.) It included detailed provisions on the division of community property, child support, and attorney's fees. (*Id.* at p. 1744.) The parties further agreed that default would be entered against the wife and that the husband would prepare and submit to the court an interlocutory judgment[11] incorporating the parties'

_____

[10] The agreement specified it would survive any reconciliation between the parties unless they agreed in writing otherwise. Although the husband and wife disagreed about whether they ever reconciled, it was undisputed they never entered into any written agreement to alter their original stipulation. (*Tamraz, supra,* 24 Cal.App.4th at p. 1745.)

[11] At that time, California law required a one-year waiting period between entry of an interlocutory judgment and a final judgment of divorce. This somewhat anachronistic "waiting" period was intended to encourage reconciliation after infidelity. (See generally *Pereira v. Pereira* (1909) 156 Cal. 1, 9–10.)

stipulation.  (*Tamraz,* at p. 1744.)  But the husband and his counsel failed to comply with this latter provision and the case remained open.  (*Id.* at p. 1745.)  Thirteen years later, the wife filed her own divorce action.  After consolidating the two actions, the trial court entered a judgment incorporating the earlier stipulation nunc pro tunc to November 1976 (*ibid*), and the Court of Appeal affirmed.  (*Id.* at p. 1749.)

*Tamraz* disposes of Rey's principal argument that the power to enter judgment nunc pro tunc under section 2346 only arises once a request to enter judgment has been presented to the court.[12]  As here, the parties in *Tamraz* entered into a settlement agreement that disposed of all issues.  That agreement made the husband's counsel responsible for incorporating the agreement in a proposed judgment to be submitted to the court.  Also as in this case, the alleged "mistake, negligence or inadvertence" was the failure by the husband's lawyer to prepare the proposed judgment and submit it to the court.  But because the parties' agreement resolved all issues necessary for entry of a judgment, leaving nothing more to litigate, the statute granted the court the necessary authority to do justice between the parties by entering the judgment nunc pro tunc to a date on which judgment could have been entered had the husband's counsel acted in a more timely fashion.

Attempting to distinguish *Tamraz*, Rey contends the result in that case turns on the fact that "it was husband's fault alone [that] no application for judgment was made and no default judgment [could be] taken against wife as contemplated in the settlement agreement."  (See *Tamraz, supra,* 24 Cal.App.4th at p. 1748.)  He asserts that here, he and his lawyer "w[ere] not

_____

12    *Tamraz* involved former Civil Code section 4513, which Family Code section 2346 "continues . . . without substantive change."  (See Cal. Law Revision Com. com., foll. § 2346.)

at fault at all" for any delay in requesting entry of judgment. But the crucial fact in both cases is that the marital settlement agreement itself placed responsibility on the husband's lawyer to formally prepare the judgment incorporating the agreement and submit it to the court.

Moreover, as we have noted, whether there was sufficient evidence of "mistake, negligence or inadvertence" and who was responsible for it are questions of fact for the trial court, which we are obligated to affirm if supported by substantial evidence. Rey points to "multiple unanswered e-mails to Judit's attorney" in support of his argument.[13] But the e-mails show that when questioned by Judit's lawyer in early October about the delay in preparing and submitting the judgment, Rey's counsel responded by raising issues unrelated to that particular task, specifically his request to modify the agreed-upon amount of child support and questioning Judit about her progress in refinancing the marital residence. These issues might provide the basis for a motion to enforce the judgment or a postjudgment motion to modify child custody and support, but they were not a valid reason to delay submission of the judgment as already agreed to by the parties.

In a variation on the same theme, Rey points to language in subdivision (d) of section 2346 that precludes entry of judgment nunc pro tunc under subdivision (a) to a time "before trial in the matter, before the date of an uncontested judgment hearing in the matter, or before the date of submission to the court of an application for judgment on affidavit pursuant to Section 2336." A similar argument was made and rejected in *Tamraz,* where the

---

[13] After Judit's death, Rey initially asserted before the trial court that the August 2021 settlement was merely a "partial agreement regarding the division of assets and debts." Although he acknowledges this argument in reciting the procedural history of the case, he no longer makes that claim on appeal.

appellate court acknowledged "there never was a trial, hearing on uncontested judgment or application for judgment on affidavit in the 1976 action." (*Tamraz, supra,* 24 Cal.App.4th at p. 1748.) But as the trial court in that case found (and the trial court in this case impliedly determined), "the reason none of these events occurred was because husband [and his attorney] failed to follow through on his obligations under the settlement agreement." (*Ibid.*) The appellate court in *Tamraz* concluded that the "[h]usband should not be allowed to take advantage of his own wrong in order to avoid obligations he clearly undertook in the settlement agreement." (*Ibid.*)

The only significant difference between this case and *Tamraz* is the purpose for which the judgment was entered nunc pro tunc. In *Tamraz,* there was a basic fairness principle at stake but no unanticipated death of a party. The primary effects of entering the judgment nunc pro tunc were to establish a substantial arrearage in child support and recognize the husband's unfulfilled obligation to account for the receipts from his law practice. (*Tamraz, supra*, 24 Cal.App.4th at pp. 1744–1745.) In this case, the purpose was even more compelling—to avoid compounding the tragedy of Judit's unforeseen death with the injustice that would otherwise occur by distributing the community property of a couple who had been separated for more than six years, in contravention of the Agreement they reached before the traffic accident.[14]

Finally, we reject Rey's additional contention that the trial court erred by entering a judgment of dissolution without the exchange or formal waiver

_____

[14] Because we conclude that section 2346 as interpreted by *Tamraz* authorized the family court to enter a final judgment of dissolution nunc pro tunc, we need not consider the potential effect of the Agreement as a waiver of Rey's rights as a surviving spouse under the Probate Code. (See *Welch v. Welch* (2022) 79 Cal.App.5th 283.)

of the parties' final declarations of disclosure.  (§ 2106.)  Because this argument is raised for the first time on appeal, it is forfeited.  (See *In re Riva M.* (1991) 235 Cal.App.3d 403, 411.)  In any event, the parties' Agreement specifically provided that they waived their final disclosures and would "sign the requisite form."  The court could properly find this was substantial compliance with the statutory requirement and an insufficient basis to deny entry of an otherwise proper final judgment.

## DISPOSITION

The judgment is affirmed.  Respondent shall be entitled to costs on appeal.


DATO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.


12